Elco **HERNANDEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 08–95–00344–CR.

Court of Appeals of Texas, El Paso.

April 17, 1997.

Gary Hill, El Paso, for Appellant.

Jaime E. Esparza, District Attorney, El Paso, for State.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

## OPINION

LARSEN, Justice.

Elco Hernandez appeals from a conviction for aggravated robbery and aggravated assault. A jury assessed punishment at thirty-two years' confinement on the aggravated robbery charge, and ten years' for the aggravated assault. Appellant complains that the evidence is legally insufficient to support the conviction for aggravated robbery because the State failed to prove that the victim suffered "serious bodily injury." Additionally, appellant claims the trial court erred in not instructing the jury on self-defense and defense of third persons. We affirm in part,

reform in part, and reverse and remand in part.

## FACTS

On July 25, 1994, Hector Ramirez (Ramirez) was working the 11 p.m. to 7 a.m. shift at the Circle K located at Montana and Hawkins in El Paso. Around 1:30 a.m., while Ramirez was at the back of the store visiting with his friend Vince Carlevale (Carlevale), two young men entered the store, grabbed a cigarette display rack containing approximately 100 packs of cigarettes, and exited the store, dropping a number of packs as they went.

According to appellant's written statement, he and four companions parked their Jeep Cherokee in the parking lot of the Circle K. Two of his friends entered the store, "to supposedly buy cigarettes" while the other three remained in the vehicle. After the two men left the vehicle to get cigarettes, one of the men still in the vehicle told appellant that the other two were going to steal the cigarettes. Appellant saw his two companions running out of the store with two people in pursuit. A struggle between appellant's friends and the pursuers ensued. Appellant grabbed a pocket knife, put it in his pocket and went to help his two friends. Appellant hit one of the pursuers and knocked him to the ground. All of appellant's friends then began to strike that person. The other person from the store then hit appellant in the face. According to appellant, "I could not get him off of me so I took out my knife and I stabbed him once in the right side of his chest." Appellant could not remember when he stabbed the other person. Appellant and his companions left in the Cherokee, and appellant threw his knife out of the window.

There is some confusion about the sequence of events. Hector Ramirez testified that Carlevale followed the two men outside. Ramirez thought Carlevale had gone out to get the license plate number of the vehicle. Carlevale did not return so Ramirez went to look for him. He found Carlevale struggling with the two young men. Ramirez went to his assistance. Appellant then got out of the vehicle parked at the side of the store and joined the struggle. Two more of appellant's friends left the car and joined in. At this point, Ramirez was struggling with two of the men and Carlevale was fighting with the other three. At some point, Ramirez lost sight of Carlevale and all five of the men were beating up on Ramirez. Then all of them got in the vehicle and left. Ramirez found Carlevale lying in front of the store holding his side. He then called 911. It was while he was on the phone that Ramirez discovered he had been stabbed.

Carlevale, on the other hand, testified that he followed Ramirez out of the store, ran around the corner, and found two men beating Ramirez and two standing by watching. Carlevale knocked down the two spectators and went to Ramirez' aid. Another man came at Carlevale and punched him in the ribs. However, Carlevale then saw blood all over his leg and realized he had been stabbed. All of the men then left in the vehicle.

Police Officer Tomas Gonzales saw a black Jeep Cherokee pull out of the parking lot of the Circle K. He followed the vehicle and saw someone throw something out of the right passenger window. The car was stopped and all five people detained. The officers took the five men back to the Circle K where Carlevale identified appellant as the man who stabbed him. Ramirez was unable to identify who stabbed him.

Officer Doug Knutson later discovered the knife on the side of the road several blocks from the Circle K.

Ramirez and Carlevale were both taken to the hospital and underwent surgery for their stab wounds.

## SERIOUS BODILY INJURY

### Standard of Review

In his first point of error, appellant asserts that the evidence is insufficient to prove that Hector Ramirez suffered "serious bodily injury." In passing on sufficiency of the evidence, we determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318, 319, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560, 573

(1979); *Geesa v. State,* 820 S.W.2d 154, 159 (Tex.Crim.App.1991). We do not resolve conflicts of fact or assign credibility to witnesses, as it was the function of the trier of fact to accept or reject any, part, or all of any witness's testimony. *See Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State,* 819 S.W.2d 839, 843 (Tex. Crim.App.1991). Our duty, rather, is to determine only if the explicit and implicit findings of the trier of fact are rational by viewing all the evidence in a light most favorable to the verdict. *Adelman,* 828 S.W.2d at 421–22. In so doing, we resolve any inconsistency in the evidence in favor of the verdict. *Matson,* 819 S.W.2d at 843, *quoting Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).

### Sufficiency of the Evidence

A person commits robbery if, in the course of committing theft and with the intent to obtain or maintain control of property, he intentionally, knowingly, or recklessly causes bodily injury to another. TEX.PENAL CODE ANN. § 29.02(a)(1)(Vernon 1994). A person commits aggravated robbery if he causes *serious* bodily injury to another in the course of a robbery. TEX.PENAL CODE ANN. § 29.03(a)(1)(Vernon 1994). In the indictment, the State alleged, in pertinent part, that appellant "did then and there ... intentionally and knowingly cause serious bodily injury to HECTOR RAMIREZ by stabbing HECTOR RAMIREZ in the abdomen area with a knife...."

Serious bodily injury means an injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. TEX.PENAL CODE ANN. § 1.07(a)(46)(Vernon 1994). Bodily injury, on the other hand, is defined as physical pain, illness, or any impairment of condition. TEX.PENAL CODE ANN. § 1.07(a)(8)(Vernon 1994).

■ Though often a matter of degree, there must be a meaningful distinction or difference between "bodily injury" and "serious bodily injury." *Moore v. State,* 739 S.W.2d 347, 349, 352 (Tex.Crim.App.1987). The determination that an injury qualifies as serious bodily injury must, therefore, be made on a case-by-case basis. *See e.g. id. at* 349, 352; *Madden v. State,* 911 S.W.2d 236, 244 (Tex.App.—Waco 1995, pet. ref'd). There are no wounds that are per se "serious bodily injury." *See e.g. Moore,* 739 S.W.2d at 352 (a knife wound, even though it may be caused by a deadly weapon, is not per se serious bodily injury); *Webb v. State,* 801 S.W.2d 529, 533 (Tex.Crim.App.1990)(the necessity of surgery, alone, is insufficient to establish serious bodily injury). The State is required to prove serious bodily injury under section 1.07(a)(46) of the Texas Penal Code. The appellate court must evaluate each case on its facts to determine whether the injury was such as to allow a fact finder to determine that it met the definition of "serious bodily injury." *See Moore,* 739 S.W.2d at 352, 354.

■ At trial, Dr. Leo Mercer, the emergency room physician that treated Mr. Ramirez, testified on direct examination as follows:

STATE: What did the wound appear to be?

DR. MERCER: [H]e appeared to have about a two centimeter [approx. one inch] laceration of the right anterior chest.

. . . . .

STATE: You did some type of exploratory to see what the damage that was done by the wounding; is that correct?

DR. MERCER: An operation, yes ... exploring the abdominal contents, he was found to have a laceration involving the right lobe of the liver.

STATE: How would you describe that wound? Is that a serious injury?

DR. MERCER: Potentially, yes.

STATE: Untreated, could it cause death?

DR. MERCER: Death, no. This was a non-bleeding one-centimeter laceration to the liver.

STATE: Would you consider it to be serious bodily injury?

DR. MERCER: Yes.

On cross-examination, Dr. Mercer testified:

DEFENSE: And you said that this wound could not have caused death?

DR. MERCER: It's unlikely that that particular wound would cause death.

Again on re-direct examination:

STATE: Let's talk about it untreated first. Say he'd not gotten treated for it. Capable of causing death?

DR. MERCER: Unlikely.

STATE: Have you seen people die of wounds of that type, where initially you might think, unlikely this person is going to die or will die from this type of wound?

DR. MERCER: I've seen injuries that appeared to be on the surface relatively minor, but as a consequence, perhaps of other coexisting conditions, like clotting problems, things that patients would take, medicines, aspirin, they would continue to bleed, even if they had a relatively small injury.

On re-cross:

DEFENSE: Doctor, in your experience, would this wound have caused the death of Mr. Ramirez?

DR. MERCER: I think the wound that I saw in Mr. Ramirez, the nature of the wound, it is, in my opinion, unlikely that it would have caused the death of the patient.

DEFENSE: So in your opinion it is not a life-threatening wound?

DR. MERCER: I said it was unlikely that it would have caused the death of the patient.

DEFENSE: Is it a life-threatening wound or not? Could it cause death?

DR. MERCER: Potentially.

DEFENSE: And what do you base that on?

DR. MERCER: [T]here are circumstances where relatively minor wounds or potentially minor wounds can seem to be relatively minor, although in patients that don't clot, patients that have oth-er coexisting conditions, it can prove to be the cause of their death.

DEFENSE: What other coexisting conditions did you find in Mr. Ramirez?

DR. MERCER: I found none.

DEFENSE: So then if there were no coexisting conditions, this wound would not cause death. Correct?

DR. MERCER: It *is* unlikely to have caused his death; that's correct.

 The State argues that a jury could infer from Dr. Mercer's testimony that there was at least some risk of death. However, bodily injury cannot be elevated to "serious bodily injury" by postulating potential complications which are not in evidence. *See Moore,* 739 S.W.2d at 354. The state must present evidence that the victim suffered bodily injury that created a substantial risk of death. *Moore,* 739 S.W.2d at 352. In other words, the state must present relevant and probative evidence from which the trier of fact could infer beyond a reasonable doubt that the injury itself created an appreciable risk of death. *Moore,* 739 S.W.2d at 352.

The State also argues that there was sufficient evidence of the severity of the injury despite Dr. Mercer's testimony. Citing *Carter v. State,* 678 S.W.2d 155, 157 (Tex.App.—Beaumont 1984, no pet.), the State appears to assert that Mr. Ramirez' injury was obviously serious. In *Carter,* the Beaumont court acknowledged that serious bodily injury could be established in the absence of expert opinion, if the injury and its effects were obvious. *Id.* In that case, the victim testified that he was shot in the mouth, that the bullet passed through his tongue and the roof of his mouth then lodged in his neck near his spine. *Id.* The court held that this testimony was sufficient to sustain the state's burden of proof without any expert medical testimony. Here, however, expert testimony was presented and the victim testified only to the fact that some time after he was stabbed, he discovered the injury, that he underwent surgery, and was ordered by his doctor to stay home from work for six weeks. From the record before us, there is no testimony,

expert or non-expert, that Mr. Ramirez' injury created a substantial risk of death.

■ The State further argues that there is some evidence that Mr. Ramirez suffered serious permanent disfigurement. Disfigurement, like beauty, is in the eye of the beholder. However, when distinguishing between "bodily injury" and "serious bodily injury" it is, again, a matter of degree. Simply that an injury causes a scar is not sufficient to establish serious permanent disfigurement. *See McCoy v. State*, 932 S.W.2d 720, 724 (Tex. App.—Fort Worth 1996, pet. ref'd)(slight scar on the lip, though permanent, was not sufficient to show serious permanent disfigurement). There must be evidence of some significant cosmetic deformity caused by the injury. *See e.g., Brown v. State*, 605 S.W.2d 572, 575 (Tex.Crim.App.1980)(testimony that broken nose would cause disfigurement and dysfunction if untreated sufficient to establish serious bodily injury); *Moore v. State*, 802 S.W.2d 367, 369 (Tex.App.—Dallas 1990, pet. ref'd)(sufficient evidence of serious bodily injury where victim's cheek bone was fractured in three places; surgery necessary to prevent significant cosmetic deformity); *Pitts v. State*, 742 S.W.2d 420, 421–22 (Tex. App.—Dallas 1987, no pet.)(evidence of significant disfigurement where victim suffered five fractures in the facial area necessitating several surgeries to repair the damage). Furthermore, the relevant issue in determining the degree of disfigurement is the damage caused by the wound when inflicted, not disfigurement as exacerbated or ameliorated by medical treatment. *Brown*, 605 S.W.2d at 575; *Moore*, 802 S.W.2d at 370; *Goodman v. State*, 710 S.W.2d 169, 170 (Tex.App.—Houston [14th Dist.] 1986, no pet.). The only evidence of disfigurement presented at trial was Mr. Ramirez showing the jury that he had a scar from the stab wound and a scar from the surgery. There was no evidence offered on the extent or permanence of the scarring. Dr. Mercer testified that the stab wound itself was a one-inch laceration to the abdomen. This scar, without more evidence of permanence or degree of disfigurement, is insufficient to elevate "bodily injury" to "serious bodily injury."

■ Finally, the State contends that Mr. Ramirez' testimony that he was ordered by his doctor not to work for six weeks is evidence of protracted impairment. Protracted impairment means that some function of either an organ or body member must be impaired. *Moore*, 739 S.W.2d at 356 (Clinton, J. concurring). But, again, there was no evidence offered of impairment of a member or organ. Nor was there evidence that Mr. Ramirez was restricted in any particular physical activity. This period of recuperation does not elevate bodily injury to serious bodily injury but at best shows only some impairment of physical condition. *See Moore*, 739 S.W.2d at 356.

The evidence, when viewed in the light of the requirements of section 1.07(a)(46), is insufficient to prove the element of serious bodily injury. We, therefore, find the evidence insufficient to support the jury's verdict for the offense of aggravated robbery and sustain Hernandez' first point of error.

### JURY CHARGE

■ In his second and third points of error, Hernandez claims that the trial court erred in refusing to include instructions on self-defense and defense of third persons in the jury charge. When properly requested, a defendant is entitled to a charge on every defensive theory raised by the evidence, regardless of the strength of the evidence or whether it is controverted. *Hayes v. State*, 728 S.W.2d 804, 807 (Tex.Crim.App.1987); *Hernandez v. State*, 914 S.W.2d 218, 223 (Tex.App.—El Paso 1996, pet. ref'd). A defendant's testimony alone may be sufficient to raise a defensive theory requiring a jury instruction. *Dyson v. State*, 672 S.W.2d 460, 463 (Tex.Crim.App.1984); *Halbert v. State*, 881 S.W.2d 121, 124 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd).

Appellant contends that his signed confession raises the issue of self-defense and defense of a third person. In his confession, the appellant stated the following:

I then saw Jojo and Chris running around the corner from the front of the store. As they both turned the corner, two other people caught up to them and started to fight with Jojo and Chris.

I saw that Jojo and Chris were getting hit. I then grabbed a knife that I carry for protection and put it in my left pocket. *I then got out of the Cherokee to help Jojo and Chris.*

A guy in the blue shirt came at me and I hit him two times and he fell down. It was then that my friends started to hit the guy. The guy in the blue shirt got up and started to run around the Cherokee.

*All the sudden a guy in a white shirt blind sided me and hit me in the face. I could not get him off of me so I took out my knife and I stabbed him once in the right side of his chest.* I do not remember when I stabbed the guy in the blue shirt. It may have been when he went around the Cherokee the first time. [Emphasis added.]

■ Because appellant used deadly force in stabbing Ramirez and Carlevale, he must meet the requirements of both section 9.31 and section 9.32 of the Penal Code before he is entitled to an instruction on self-defense. Section 9.32 provides that the use of deadly force is justified in self-defense only when three conditions are present: (1) the defendant would have been justified in using force under section 9.31;[1] (2) a reasonable person in the defendant's position would not have retreated; and (3) the use of deadly force was reasonably believed to be immediately necessary to protect the defendant against another's use or attempted use of unlawful deadly force. TEX.PENAL CODE ANN. § 9.32 (Vernon 1994 & Supp.1997); *see Riddle v. State,* 888 S.W.2d 1, 6 (Tex.Crim.App.1994), *cert. denied,* 514 U.S. 1068, 115 S.Ct. 1701, 131 L.Ed.2d 563 (1995); *Welch v. State,* 908 S.W.2d 258, 264 (Tex.App.—El Paso 1995, no pet.). In the absence of evidence of use or attempted use of deadly force by the victim, the section 9.32 defense is not available and the accused is not entitled to a jury instruction on self-defense. *Welch,* 908 S.W.2d at 264, *citing Werner v. State,* 711 S.W.2d 639, 644 (Tex.Crim.App.1986).

A person is justified in using deadly force against another to protect a third person if, under the circumstances as the accused reasonably believes them to be, the accused would be justified in using deadly force to protect himself against the unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect, and the accused reasonably believes his intervention is *immediately necessary to protect the third person.* TEX.PENAL CODE ANN. § 9.33 (Vernon 1994). *Hernandez,* 914 S.W.2d at 224.

■ Even if appellant's testimony is accepted as true, neither self-defense nor defense of a third person is raised. Appellant offered no evidence that either of the victims had a weapon or attempted to use deadly force. Absent this showing, the accused is not entitled to a jury instruction on self-defense. *Welch,* 908 S.W.2d at 264. Similarly, an instruction on defense of a third person is unavailable to appellant. Appellant presented no evidence that either victim used or attempted to use deadly force against appellant's companions. *See id.* Under these circumstances, an instruction on defense of a third person is unwarranted. Appellant's second and third points of error are overruled.

### CONCLUSION

■ Although we find the evidence insufficient to support the jury's implied finding of "serious bodily injury," there is nonetheless ample evidence of "bodily injury." We note that the trial court also submitted a charge on robbery to the jury. Robbery is a lesser-included offense of aggravated robbery. By finding appellant guilty of aggravated robbery, the jury necessarily found appellant guilty of robbery. We conclude the evidence is sufficient to support appellant's guilt of the lesser-included offense. We reform the judgment to reflect conviction for the lesser-included offense of robbery. *See Bigley v. State,* 865 S.W.2d 26, 27–28 (Tex.Crim.App.1993); *Goodwin v. State,* 815 S.W.2d 586, 588 (Tex.Crim.App.1991); *Lucero v. State,* 915 S.W.2d 612, 615 (Tex.App.—El Paso 1996, pet. ref'd).

---

1. Except as provided in section (b), a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of force. TEX.PENAL CODE ANN. § 9.31(a)(Vernon 1994).

Accordingly, the judgment on aggravated robbery is reformed to reflect conviction for the lesser-included offense of robbery. That part of the judgment assessing punishment for the aggravated robbery is reversed and remanded to the trial court for a new punishment hearing. The conviction for the offense of aggravated assault is affirmed.