NO. 07-11-00424-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 19, 2012

_____

TERRY MICHAEL SIZEMORE, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NO. 63,116-D; HONORABLE DON R. EMERSON, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Appellant, Terry Michael Sizemore, appeals his conviction for aggravated assault[1] and resulting fifteen-year sentence. He brings to this Court one issue on appeal: whether the evidence is sufficient to establish the element of "serious bodily injury." We will affirm.

Factual and Procedural History

On February 6, 2011, complainant, Barbara Michie, was at appellant's house visiting her friend, Teresa Smith, who was appellant's girlfriend. At some point during

[1] See TEX. PENAL CODE ANN. § 22.02(a)(1) (West 2011).

the night, as appellant, Smith, and Michie drank together, Smith decided she wanted her car keys, but appellant refused to give them to her. A physical altercation ensued between appellant and Smith. Michie intervened to try to pull appellant off Smith, apparently to no avail. Appellant and Smith carried on the fight through several rooms of the house. After her efforts to separate appellant and Smith were unsuccessful, Michie decided to call Smith's son for assistance. As she was in the process of doing so, appellant leapt onto Michie and bit her. Later, it would be learned that appellant had bitten off a piece of Michie's ear.

At some point, Smith had called 911. At 1:19 a.m., Officer Joel Bullard of the Amarillo Police Department was dispatched to the residence where, upon his arrival one to two minutes later, he saw appellant screaming at a female as he pushed her inside the house. Bullard also noticed a vehicle backing up to pull away from the house. He signaled the unidentified driver to stop, and the driver complied. As Bullard approached the vehicle, he saw Michie in the backseat of the vehicle holding a bloody towel or cloth to the right side of her head. Bullard described Michie as "frantic" and "bleeding profusely." After examining her injury, which involved Michie missing what Bullard estimated to be a two-inch by one-half-inch section of her lower right ear, he summoned an ambulance for Michie.

A fellow officer arrived a short time later to assist Bullard, and the two officers made their way to the front door where they summoned appellant to the doorway. The officers noted that appellant sported blood–from an unidentified source–on his face and lips and in his beard. "[A]gitated" and "combative," appellant refused to comply with

2

Bullard's instruction to come outside. Bullard pulled appellant from the doorway to the outside where the officers were able to place him in handcuffs and put him in the backseat of a patrol car as they continued their investigation. Ultimately, appellant was arrested and charged with aggravated assault.

A Potter County jury found appellant guilty of aggravated assault, and the trial court assessed punishment at fifteen years' imprisonment. Appellant appeals his conviction, seemingly conceding that there was sufficient evidence of the elements of simple assault but contending that the evidence was insufficient that Michie sustained a *serious* bodily injury, a required element of the offense of aggravated assault.

## Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Brooks v. State, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." Brooks, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by Jackson." Id. When reviewing all of the evidence under the Jackson standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. See id. at 906–07

3

n.26 (discussing Judge Cochran's dissenting opinion in <u>Watson v. State</u>, 204 S.W.3d 404, 448–50 (Tex.Crim.App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." <u>Id.</u> at 899.

Applicable Law

A person commits assault if he intentionally, knowingly, or recklessly causes bodily injury to another. <u>See</u> TEX. PENAL CODE ANN. § 22.01(a)(1) (West 2011). To establish the offense of *aggravated* assault, the State must prove the defendant caused serious bodily injury to another. <u>Id.</u> § 22.02(a)(1). "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." <u>Id.</u> § 1.07(a)(8) (West Supp. 2012). "Serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." <u>Id.</u> § 1.07(a)(46).

The record does not suggest that the injury to Michie's ear created a substantial risk of death, and there is nothing in the record that would suggest that the injury caused protracted hearing loss.[2] So, we will focus on the remaining aspect of the definition of "serious bodily injury," namely serious permanent disfigurement.

---

[2] There is, though, a brief reference to Michie's statement at the time of the injury that she could not hear. We note first that this was the State's attorney's statement and add that nothing in Michie's testimony suggested that, even if she was not able to hear at the time, she has suffered a protracted loss of hearing in that ear.

4

We begin by noting the well-established rule that the relevant issue is the disfiguring effect of the bodily injury *as it was inflicted*, not after the effects had been ameliorated or exacerbated by other actions such as medical treatment. See Stuhler v. State, 218 S.W.3d 706, 714 (Tex.Crim.App. 2007); Fancher v. State, 659 S.W.2d 836, 838 (Tex.Crim.App. 1983) (en banc); Brown v. State, 605 S.W.2d 572, 575 (Tex.Crim.App. [Panel Op.] 1980). There are no wounds that constitute "serious bodily injury" *per se.* Hernandez v. State, 946 S.W.2d 108, 111 (Tex.App.—El Paso 1997, no pet.) (citing as examples Webb v. State, 801 S.W.2d 529, 533 (Tex.Crim.App. 1990) (en banc) (per curiam), and Moore v. State, 739 S.W.2d 347, 352 (Tex.Crim.App. 1987) (en banc)). Instead, we must determine whether an injury constitutes a serious bodily injury on a case-by-case basis, evaluating each case on its own facts to determine whether the evidence was sufficient to permit the finder of fact to conclude that the injury fell within the definition of "serious bodily injury." See Moore, 739 S.W.2d at 352; Eustis v. State, 191 S.W.3d 879, 884 (Tex.App.—Houston [14th Dist.] 2006, pet. ref'd).

"Serious bodily injury" may be established without a physician's testimony when the injury and its effects are obvious. See Carter v. State, 678 S.W.2d 155, 157 (Tex.App.—Beaumont 1984, no pet.). The person who sustained the at-issue injury is qualified to express an opinion about the seriousness of that injury. Hart v. State, 581 S.W.2d 675, 677 (Tex.Crim.App. [Panel Op.] 1979); Coshatt v. State, 744 S.W.2d 633, 636 (Tex.App.—Dallas 1987, pet. ref'd).

---

We note, however, that the record does contain evidence that would suggest some degree of impairment of Michie's ear as a result of the injury. She testified that she still experienced pain in her right ear resulting from the injury and that the pain increased whenever she lays in such a way to put pressure on that ear.

Simply that an injury causes scarring is not sufficient, on its own, to establish serious permanent disfigurement. Hernandez, 946 S.W.2d at 113; see McCoy v. State, 932 S.W.2d 720, 724 (Tex.App.—Fort Worth 1996, pet. ref'd). A reviewing court must find more than mere scarring alone; instead, it must find in the record evidence of "some significant cosmetic deformity" in order to conclude that the evidence of serious bodily injury was sufficient. Compare Hernandez, 946 S.W.2d at 113 (finding evidence of one-inch scar from stab wound in addition to a surgical scar insufficient to "elevate 'bodily injury' to 'serious bodily injury'"), and McCoy, 932 S.W.2d at 724 (concluding evidence of slight scar on lip, though permanent, was not sufficient to show serious permanent disfigurement), with Moore v. State, 802 S.W.2d 367, 369–70 (Tex.App.—Dallas 1990, pet. ref'd) (finding sufficient evidence of serious bodily injury where victim's cheekbone was fractured in three places and surgery needed to prevent significant cosmetic deformity), and Pitts v. State, 742 S.W.2d 420, 421–22 (Tex.App.—Dallas 1987, pet. ref'd) (concluding evidence of significant disfigurement was sufficient where victim suffered five facial fractures necessitating several surgeries to repair damage).

Likewise, the necessity of surgery alone is insufficient to establish serious bodily injury. See Webb, 801 S.W.2d at 533. Whether a "bodily injury" is "serious," in terms of the Texas Penal Code, does not depend solely upon whether the victim received medical treatment. See Moore, 739 S.W.2d at 354. However, in evaluating the evidence supporting serious bodily injury, courts do consider as a relevant factor whether the injury would be permanently disfiguring without medical treatment. See

6

Brown, 605 S.W.2d at 575 (concluding evidence that a broken nose would cause disfigurement and dysfunction if untreated sufficient to establish serious bodily injury).[3]

Analysis

Photographs of Michie's injuries as she waited at the scene for an ambulance were admitted into evidence without objection. These photographs show a significant amount of blood in and around the area surrounding Michie's ear, and they clearly depict that a piece of her ear is missing. Photographs of Michie's right ear taken one or two days after the assault and after she had gotten medical treatment were also admitted without objection. These photographs depict the sutures used to close and repair the wound to some degree and confirm that part of her lower ear remained missing, causing her ear to be misshapen.

Michie testified that, as appellant punched, kicked, slapped, and dragged Smith throughout the house, she attempted to call Smith's son for assistance in breaking up the fight. Appellant leapt onto her, punched her, and bit her. She described the injury and the surgical procedure to repair it, adding that the missing portion of her ear was never found. Michie testified that, seven months after the injury, she still experienced

---

[3] In a case bearing the same name, the Dallas court reconciled Moore with Brown:

> We interpret Moore as prohibiting the prosecution's attempts to transform a minor injury into a serious bodily injury through the use of speculative testimony about what might have occurred had the minor injury not been medically treated.

Moore, 802 S.W.2d at 370 (discussing Moore, 739 S.W.2d at 354, and Brown, 605 S.W.2d at 575).

pain in her ear. This pain increased if she happened to lay in such a way that she put pressure on her right ear. She explained that she had not yet undergone the reconstruction procedure and, at the prosecutor's request, showed her ear to the jury, enabling it to assess the degree of disfigurement. Appellant testified at trial and denied having committed an assault against Michie. He explained, though, that had he known she was as severely injured as she was, he would have rendered aid at the time because "it look[ed] bad."

Medical records from Michie's two-day hospital stay describe Michie's wound upon her arrival at the emergency room as a "traumatic injury" to her right ear. Michie's "traumatic injury" is more than one resulting in mere scarring; her medical records describe a "loss of significant section of the lower ear," more technically a "gross avulsion of the helix and lobule area of the right ear." Her preoperative diagnosis described her injury as an open wound to the right ear with "underlying cartilage exposed and desiccated." The treating physician described the injury in more detail:

> Her right ear shows a significant degree of avulsion going from around the mid aspect of the helix all the way down involving the lobule. The entire segment measures approximately 6 cm in length about a centimeter and a half in width [and is] simply gone. The underlying cartilage itself appears to be broken and desiccated. There appears to be no actual broken segments, but there appears to be almost nibbled off section[s] of the edges of the cartilage.

Based on his assessment of the injury, including the exposed, desiccated cartilage, the treating physician advised surgical intervention to cleanse the wound, repair and remove tissue in the area of the wound, and cover the remaining cartilage, a procedure the medical records describe as a "complex repair." Records indicated that the surgical

8

intervention was successful in cleansing and closing the wound, but did not result in a full reconstruction of the ear; this initial surgical procedure, it appears, was not intended to accomplish such. Ultimately, the doctor noted, the injury will require a two- to three-stage reconstruction using rib cartilage to reconstruct her ear.

The jury was free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence presented to it. Eustis, 191 S.W.3d at 884. That said, the jury could have rationally concluded that Michie suffered serious permanent disfigurement from the photographs of her injury at the time of the assault, Michie's testimony describing the injury and complications associated with it, the in-court demonstration of the resulting misshapen form of her lower right ear, and the extensive medical records describing the details of her injury. We conclude the evidence is sufficient to establish the requisite elements of aggravated assault, including the jury's finding that appellant caused Michie serious bodily injury. Accordingly, we overrule appellant's sole point of error.

## Conclusion

Having overruled appellant's sole point of error, we affirm the trial court's judgment of conviction. See TEX. R. APP. P. 43.2(a).

Mackey K. Hancock
Justice

Publish.

9