# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-18-00712-CR

---

**Robert Eric Wade, III, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 26TH DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 16-2156-K26, THE HONORABLE SUZANNE BROOKS, JUDGE PRESIDING

---

### O P I N I O N

Robert Eric Wade, III, was charged with aggravated assault. *See* Tex. Penal Code § 22.02.[1] At the end of the guilt-or-innocence phase, the jury found Wade guilty of the charged offense. At the end of the punishment phase, the jury recommended that Wade be sentenced to five years' imprisonment and that he be placed on community supervision. *See id.* §§ 12.33, 22.02(b). The district court rendered its judgment of conviction in accordance with the jury's verdicts and placed Wade on community supervision for seven years. On appeal, Wade contends that the evidence supporting his conviction was insufficient and that the district court should have included an instruction in the jury charge for the lesser included offense of assault. We will reverse the district court's judgment of conviction and remand for a new trial.

---

[1] The indictment also alleged that Wade committed the offense of burglary of a habitation. *See* Tex. Penal Code § 30.02. However, the State later abandoned that charge.

## BACKGROUND

As set out above, Wade was charged with committing aggravated assault. Specifically, the indictment alleged that Wade "intentionally, knowingly, or recklessly caused serious bodily injury to **Taylor Sughrue**, **by biting off . . . Sughrue's earlobe**" in July 2016. The indictment also contained a separate deadly-weapon notice alleging that Wade "used or exhibited a deadly weapon, namely, **the defendant's** teeth, during the commission of" the offense. The undisputed evidence presented at trial established that Sughrue was dating Wade's ex-wife, Christina Reale, and was in her home at the time of the offense. The undisputed evidence also established that Reale and Wade were divorced in 2014 but that they started dating again in 2015. The evidence is disputed regarding whether Reale was also dating Wade at the time of the offense.

During the trial, the State called the following individuals to the stand: Sughrue; K.R., who is Reale's daughter; Officer Michael Silva, who responded to a 911 call regarding the incident; and paramedic James Baker, who also responded to the 911 call. In his testimony, Officer Silva explained that the bed in Reale's master bedroom "was covered with blood" when he arrived, that Sughrue "had a substantial amount of blood around his face and head," and that "a portion of [Sughrue's] earlobe [wa]s missing." Similarly, Baker explained in his testimony that Sughrue had blood on his face, that Sughrue had "an amputation of the left earlobe," that he transferred Sughrue to the hospital to see if the lobe could be reattached, that the wound had "minimal active bleeding" by the time that he treated Sughrue, that Sughrue described the pain as "seven out of ten," and that Sughrue refused any pain medication. During Baker's testimony, his incident report as well as the medical records from the hospital were admitted into evidence.

2

In her testimony, K.R. related that Sughrue was intoxicated on the night in question and that Reale helped him walk to the master bedroom. Further, K.R. recalled that she later heard Wade and Reale arguing outside, that Wade walked into the house, and that Wade headed for the master bedroom. Regarding the alleged offense, K.R. testified that Wade got on top of Sughrue while Sughrue was sleeping, that Wade's face got near Sughrue's ear, and that Sughrue screamed in a way that she had "never heard anybody scream like . . . before."

Next, the State called Sughrue to the stand. In his testimony, Sughrue stated that he fell asleep in Reale's bed but woke up after he felt someone on top of him beating him. Next, Sughrue described experiencing something painful on his ear and neck area and then noticing blood was "pouring off" his ear. When describing the injury, Sughrue stated that Wade "had pulled away and . . . ripped" his ear "away a little bit from [his] actual head." Further, Sugrue explained that he still had nerve damage at the time of trial that causes him excruciating pain if the ear is directly touched or bent in certain ways. Sugrue testified that the doctors treating his injury were unable to reattach the earlobe, that he was given eleven stitches to close the wound, and that the bottom part of his ear was reattached to his head. Further, Sughrue admitted that he was "devastated" when he learned that the earlobe could not be reattached because he would "be disfigured for the rest of [his] life." Similarly, Sughrue stated that he was permanently disfigured by the assault. During his testimony, Sughrue stepped down from the witness stand to allow the jury to examine his ears.

After the State rested, Wade testified that K.R. told him that Reale was having an affair a month before the incident in question but that he continued his relationship with Reale after she stated that she was no longer seeing Sughrue. Further, Wade recalled that he had made plans with Reale on the night in question but that she told him that she had to cancel because she

3

was going to spend the day with her brother. Next, Wade testified that he texted with Reale throughout the day, that he went to Reale's home to see if she was there, that he could not enter the home because it was locked, that he waited outside the home, and that he eventually saw a car drive to the house with Reale, K.R., and Sughrue inside. Additionally, Wade stated that he texted Reale after she got home, that she met him outside, and that they argued. Moreover, Wade testified that Sughrue opened the door and pushed him against a wall, that he pushed back, that they fell to the floor inside the home, that they wrestled, that Sughrue had something in his hand, that Sughrue hit him with the object in his hand, and that Sughrue ran to the master bedroom. Additionally, Wade stated that he ran after Sughrue because he wanted "to finish it" and because he did not know what Sughrue might have in the bedroom, that he lunged toward Sughrue, that he tackled Sughrue, that they wrestled on the bed, and that Sughrue placed him in a headlock. When describing the incident in question, Wade related that he closed his eyes and bit Sughrue because Sughrue would not release him, that he did not know what he was biting, that Sughrue screamed and released him, that he felt something soft in his mouth, and that he spit the object out. In addition, although he denied intending to bite Sughrue's earlobe off, Wade admitted that he opened his mouth, put his teeth around Sughrue's ear, and bit down hard enough to sever the earlobe. When describing the injury, Wade acknowledged that Sughrue's ear was disfigured but denied that Wade suffered serious bodily injury and further stated that if he saw Sughrue on the street and did not know who Sughrue was, he would be unable to notice any difference between Sughrue's two ears.

After Wade rested, a charge conference was convened. During the charge conference, Wade requested an instruction on the lesser included offense of assault, but the district court denied that request. At the end of the trial, Wade was convicted of the charged

4

offense, and the jury returned a separate finding specifying that Wade used or exhibited a deadly weapon during the offense.

Wade appeals his conviction.

## DISCUSSION

On appeal, Wade argues that the evidence presented at trial is legally insufficient to support his conviction and that the district court erred by failing to include an instruction on the lesser included offense of assault.

### Sufficiency of the Evidence

Under a legal-sufficiency standard of review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make "reasonable inferences from basic facts to ultimate facts." *Id.*; *see also* Tex. Code Crim. Proc. art. 36.13 (explaining that "jury is the exclusive judge of the facts"). The factfinder is "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence." *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). Appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and "defer to that determination." *Clayton v. State*,

5

235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In addition, courts must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Id.* at 107 (quoting *Jackson*, 443 U.S. at 320).

As set out above, Wade was convicted of aggravated assault for causing serious bodily injury to Sughrue by biting off a portion of Sughrue's ear. Under the Penal Code, a person commits assault if he "intentionally, knowingly, or recklessly causes bodily injury to another," Tex. Penal Code § 22.01, and commits aggravated assault if he commits assault and "causes serious bodily injury to another," *id.* § 22.02. The legislature has defined "'[b]odily injury'" as meaning "physical pain, illness, or any impairment of physical condition," *id.* § 1.07(a)(8), and "'[s]erious bodily injury'" as meaning, in relevant part, "bodily injury that . . . causes . . . serious permanent disfigurement," *id.* § 1.07(a)(46). "The distinction between 'bodily injury' and 'serious bodily injury' is often a matter of degree and the distinction must be determined on a case-by-case basis." *Reyes v. State*, No. 03-15-00233-CR, 2017 WL 1130373, at *4 (Tex. App.—Austin Mar. 23, 2017, pet. struck) (mem. op., not designated for publication).

"[T]here are no wounds that constitute 'serious bodily injury' per se." *Jackson v. State*, 399 S.W.3d 285, 292 (Tex. App.—Waco 2013, no pet.) (quoting *Hernandez v. State*, 946 S.W.2d 108, 111 (Tex. App.—El Paso 1997, no pet.)). Instead, reviewing courts "must evaluate each case on its own facts to determine whether the evidence sufficed to permit the jury to reasonably conclude that the injury fell within the definition of 'serious bodily injury.'"

6

*Reyes*, 2017 WL 1130373, at *4. "[I]n assessing the sufficiency of the evidence to establish serious bodily injury, the question is the degree of risk of death that the injury caused, or the disfiguring or impairing quality of the injury, 'as it was inflicted, not after the effects had been ameliorated or exacerbated by other actions such as medical treatment.'" *Stuhler v. State*, 218 S.W.3d 706, 714 (Tex. Crim. App. 2007) (quoting *Fancher v. State*, 659 S.W.2d 836, 838 (Tex. Crim. App. 1983)). "Simply that an injury causes scarring is not sufficient, on its own, to establish serious permanent disfigurement." *Wright v. State*, 494 S.W.3d 352, 362 n.5 (Tex. App.—Eastland 2015, pet. ref'd). Rather, "[t]here must be evidence of some significant cosmetic deformity caused by the injury." *Hernandez*, 946 S.W.2d at 113 (observing that "[d]isfigurement, like beauty, is in the eye of the beholder"); *cf. Hatfield v. State*, 377 S.W.2d 647, 649 (Tex. Crim. App. 1964) (determining that evidence that victim had cut lip, lost teeth, had stiff neck, and required hospitalization was "sufficient to sustain the jury's finding that serious bodily injury was inflicted upon him").

When presenting his sufficiency challenge, Wade concedes that the evidence established that Sughrue sustained bodily injury on the night in question and that the evidence shows that he assaulted Sughrue, but he asserts that the evidence did not establish that he committed aggravated assault because the evidence did not show that Sughrue sustained serious bodily injury. As support for his assertion, Wade highlights that Sughrue "did not characterize any disfigurement" that he sustained in the assault "as serious." Similarly, Wade contends that the medical records and the testimony from the paramedic who responded to the scene did not establish that "Sughrue sustained serious permanent disfigurement." Further, Wade points to portions of his own testimony in which he denied causing serious bodily injury to Sughrue and in

7

which he explained that if he saw Sughrue now, he would not notice any difference between Sughrue's two ears.

During the trial, EMS records for the night in question and medical records from the hospital where Sughrue was treated were admitted into evidence. The EMS records reflect that Sughrue sustained a "[t]raumatic injury," that his left earlobe had been amputated, that he had pain in his left ear following an assault while he was sleeping, and that there was "quite a bit of blood" at the scene. Similarly, the hospital records describe the injury as a "large complex laceration to the left ear externally with loss of the ear lobe," as "10 cm" long, as an amputation, as extending "into the cartilage," and as requiring "11 sutures." *Cf. Reyes*, 2017 WL 1130373, at *5 (noting that evidence regarding wounds and medical treatment performed "demonstrated more than just scarring"). The hospital records also say that Sughrue was assaulted and had dried blood on his chest; that he was experiencing pain at a level of seven that was constant, tender, and sharp; and that he continued to experience pain while sleeping before the sutures were removed.

In addition, photographs of Reale's bedroom and of Sughrue after the assault were admitted into evidence. The photos of Reale's bedroom show a significant amount of blood on the sheets and comforter. The photos of Sughrue show blood on his face and on other parts of his body and document that the earlobe was removed.

At trial, K.R. testified that she heard Sughrue scream during the assault in a way that she had "never heard anyone scream like . . . before." Following K.R.'s testimony, Sughrue explained that on the night in question he woke up when someone punched him in the face and that he felt pain on his left ear. When describing the injury, Sughrue explained that Wade pulled his ear away from his head after biting it and that he was covered in blood. Further, Sughrue

8

related that doctors were unable to reattach his earlobe. Moreover, Sughrue explained that he received eleven stitches, including stitches to reattach the bottom part of his ear to his head, and that he continued to experience pain at the time of the trial if his ear is directly touched. Sughrue also testified that he will be disfigured for life because of the injury to his ear. *See id.* at \*5 (noting that location of injury on face was relevant consideration); *Jackson*, 399 S.W.3d at 292 (explaining that "[t]he person who sustained the injury at issue is qualified to express an opinion about the seriousness of that injury"). During his testimony, Sughrue stepped down from the witness stand for the jury to examine his ear.

When confronted with a similar issue and with similar evidence, one of our sister courts of appeals concluded that evidence pertaining to an injury caused by biting an earlobe was sufficient to establish serious bodily injury. *See Sizemore v. State*, 387 S.W.3d 824, 830 (Tex. App.—Amarillo 2012, pet. ref'd). In reaching that conclusion, our sister court noted that photos of the victim's injury to her ear admitted during trial showed "a significant amount of blood in and around the area surrounding [her] ear" and showed "that a piece of her ear is missing" and that her ear is "misshapen." *Id.* at 829. Next, the court highlighted the testimony from the victim in which she related that the defendant bit her ear, that the missing portion of her ear was never found, that she underwent a surgical procedure to attempt to repair the injury, and that she still experienced pain in her ear months later. *Id.* As with Sughrue, the victim "showed her ear to the jury, enabling it to assess the degree of disfigurement." *Id.* Additionally, the court noted that the medical records described the "wound . . . as a 'traumatic injury,'" as "a 'loss of significant section of the lower ear,'" and "as an open wound to the right ear with 'underlying cartilage exposed and desiccated.'" *Id.* Moreover, the court referenced the treating physician's description of the injury as a "'segment . . . approximately 6 cm in length about a centimeter and a half in

9

width'" that is "'simply gone.'" Finally, the court observed that the records revealed that the initial surgical procedure "did not result in a full reconstruction of the ear." *Id.* at 830.[2]

Given our standard of review and in light of the similarity of the types of evidence, including medical records, describing Sughrue's injury and the victim's injury in *Sizemore* as well as the fact that both juries were given the opportunity to personally observe the injured ears, we similarly conclude that by applying "common sense, knowledge, and experience" and making reasonable inferences from the evidence presented, "the jury could have rationally concluded that" Sughrue "suffered serious permanent disfigurement." *See id.* Accordingly, we conclude that the evidence is legally sufficient to establish that Wade caused Sughrue serious bodily injury. *See* Tex. Penal Code §§ 1.07(a)(46), 22.02.

For these reasons, we overrule Wade's first issue on appeal.

**Jury Charge**

In his second issue on appeal, Wade contends that the district court erred by failing to include a lesser included-offense instruction. During the trial, Wade requested that the district court provide an instruction on assault because, according to Wade, his testimony was sufficient to warrant the instruction. After considering the parties' arguments, the district court denied the request.

---

[2] In his reply brief, Wade contends that *Sizemore* is factually distinguishable from the current case because the victim in *Sizemore* required more extensive hospitalization than Sughrue did and because the injury would "require a two-to-three stage reconstruction." *See Sizemore v. State*, 387 S.W.3d 824, 829, 830 (Tex. App.—Amarillo 2012, pet. ref'd). Although we agree with Wade that there are differences between this case and *Sizemore*, we believe that the analysis is still helpful to explaining how a jury could reasonably infer serious bodily injury to an ear based on the evidence presented at trial.

Appellate courts "use a two-step analysis to determine if a defendant is entitled to a lesser-offense instruction." *Ritcherson v. State*, 568 S.W.3d 667, 670 (Tex. Crim. App. 2018). "The first step is to determine whether the requested instruction pertains to an offense that is a lesser-included offense of the charged offense, which is a matter of law." *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016). "Under this first step of the test, an offense is a lesser-included offense if it is within the proof necessary to establish the offense charged." *Id.* As a matter of law, assault is a lesser included offense of the charged offense of aggravated assault because "it differs from the charged offense only in the respect that a less serious injury . . . suffices to establish its commission." *See* Tex. Code Crim. Proc. art. 37.09; *see also* Tex. Penal Code §§ 22.01(a)(1) (stating that assault occurs when person "intentionally, knowingly, or recklessly causes bodily injury"), .02(a)(1) (providing that assault is aggravated assault if person "causes serious bodily injury to another"). Accordingly, the first step is satisfied here.

To satisfy the second step, "there must be evidence from which a rational jury could find the defendant guilty of only the lesser offense." *Ritcherson*, 568 S.W.3d at 671. "That requirement is met if there is (1) evidence that directly refutes or negates other evidence establishing the greater offense and raises the lesser-included offense or (2) evidence that is susceptible to different interpretations, one of which refutes or negates an element of the greater offense and raises the lesser offense." *Id.* Appellate courts "consider all the evidence admitted at trial, not just the evidence presented by the defendant, and if there is more than a scintilla of evidence raising the lesser offense and negating or rebutting an element of the greater offense, the defendant is entitled to a lesser-charge instruction." *Id.* "It does not matter whether the evidence is controverted or even credible," *id.*, nor does it matter "whether that evidence is weak or strong," *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). "If the evidence

11

raises the issue, the trial court must include an instruction in the jury charge." *Ramirez v. State*, 263 S.W.3d 40, 42 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

During his testimony, Wade admitted that during an altercation with Sughrue, he bit Sughrue's ear hard enough to remove the earlobe and that Sughrue's ear was disfigured in the assault. But Wade denied more than once that his actions resulted in a serious bodily injury. Additionally, when describing the injury, Wade explained that if he saw Sughrue on the street, he would not notice any difference between his ears. *See Isaac v. State*, 167 S.W.3d 469, 475 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (explaining that "a defendant's testimony alone is sufficient to raise the issue" of whether lesser included-offense instruction should be given).

In its brief, the State contends that the testimony offered by Wade was insufficient to raise the issue of the lesser included offense of assault or to negate the charged offense. Specifically, the State asserts that the testimony regarding the severity of the wound was a lay opinion, that a defendant may not provide an opinion regarding the severity of an injury that he allegedly caused, and that Wade was not qualified to provide an expert opinion about the seriousness of the wound. The State also argues that Wade's assessment of the injury as being something that he would not notice if he observed Sughrue and did not know him could not have entitled Wade to the lesser included offense instruction because the hypothetical is flawed. More precisely, the State notes that Wade knew Sughrue and knew that Sughrue had sustained the injury at issue.

We have not been pointed to any case law supporting the proposition that a defendant may not provide testimony regarding the severity of an injury or that a jury may not consider that testimony as evidence. Courts have determined that victims are qualified to express an opinion regarding the seriousness of their injury, *see Jackson*, 399 S.W.3d at 292, and we are

12

not persuaded that an alleged offender cannot provide similar testimony regarding an injury that he observes and admits that he directly caused by the use of his teeth. Similarly, we have been unable to find support for the proposition that testimony from a witness—the defendant or otherwise—that an injury is not a serious bodily injury cannot qualify as evidence sufficient to raise the need for a lesser offense instruction even though the witness is not a doctor or other qualified expert. *Cf. id.* (stating that "'[s]erious bodily injury' may be established without a physician's testimony when the injury and its effects are obvious"). Moreover, we do not read Wade's testimony as narrowly as the State does and instead read the testimony as an expression regarding the visibility of the injury rather than a hypothetical expression of what his observations might be if he did not know Sughrue.

The State also argues that Wade's statement indicating that he did not see a deformity at the time of trial is insufficient to necessitate an instruction on the lesser offense of assault because determinations regarding whether an injury is a serious bodily injury are made based on the evidence pertaining to the injury when the injury is inflicted and not after medical treatments have ameliorated the effects of the injury. *See Stuhler*, 218 S.W.3d at 714. Although the State is correct that the assessment of the severity of an injury is based on the injury as it was inflicted, this case did not involve a circumstance in which significant medical procedures were undertaken to restore the aesthetic appearance of the ear; on the contrary, the testimony presented at trial demonstrated that the earlobe was not reattached and that the wound was closed by the use of stitches. Under the circumstances of this case, Wade's description of the current state of the injury would seem to have provided a basis upon which a jury could infer that the injury was not a severe and permanent disfigurement when it was inflicted. Even assuming that Wade's current description could not necessitate the inclusion of a lesser offense instruction,

13

Wade also testified that Sughrue did not sustain a serious bodily injury in the assault, which provided more than a scintilla of evidence that Sughrue did not suffer a serious permanent disfigurement.[3]

For these reasons, we conclude that more than a scintilla of evidence was presented during trial that negated the greater offense of aggravated assault by causing serious bodily injury and raised the lesser offense of assault by causing bodily injury and that the district court erred by denying Wade's request for a lesser included offense instruction for assault. *Cf. Bullock*, 509 S.W.3d at 929-30 (determining that trial court erred by failing to include instruction on lesser included offense of attempted theft where jury could have determined that defendant was not guilty of theft of truck but was guilty of attempted theft by believing evidence that defendant was inside truck without consent with intent to steal it and by believing defendant's

---

[3] On appeal, the State also points out that aggravated assault can be established by evidence that an individual committed assault causing serious bodily injury *or* used or exhibited a deadly weapon during the commission of an assault. *See* Tex. Penal Code § 22.02(a). Building on this proposition, the State highlights that the jury made an affirmative finding on the special issue of whether Wade used a deadly weapon during the assault and, therefore, argues that Wade was not entitled to a lesser-included charge under the second element of the test because the evidence failed to "refute[] or negate[] every theory which elevates the offense from the lesser to the greater." *See Ritcherson v. State*, 568 S.W.3d 667, 671 (Tex. Crim. App. 2018) (quoting *Arevalo v. State*, 970 S.W.2d 547, 549 (Tex. Crim. App. 1998)). However, although the indictment provided a deadly-weapon notice and although the jury charge included the special instruction pertaining to Wade's use of a deadly weapon, neither the indictment nor the application portion of the jury charge provided alternative theories for convicting Wade of aggravated assault and instead only addressed aggravated assault by causing serious bodily injury. *Cf. Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (explaining that if statute contains alternative manners in which offense may be committed but if State chooses "to plead only one," "the State is required to prove that the defendant committed the alleged crime using that specific statutory manner and means" and "may not rely on any other statutory manner and means of committing the crime it did not plead in the charging instrument"); *Sanchez v. State*, 376 S.W.3d 767, 773 (Tex. Crim. App. 2012) (stating that "[a]s a general rule, the instructions must also conform to allegations in the indictment"). Accordingly, we do not agree with the State's suggestion that the evidence was required to refute or negate both alternatives listed in the Penal Code for Wade to be entitled to the requested instruction.

testimony stating that his feet were not on the pedals, that he did not turn truck on, and that he did not attempt to move truck); *Jones v. State*, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998) (explaining that trier of fact is "free to selectively believe all or part of the testimony proffered and introduced by either side" and that lesser included offense of assault in robbery case should have been included where defendant denied that he committed theft); *Hardeman v. State*, 556 S.W.3d 916, 922-23 (Tex. App.—Eastland 2018, pet. ref'd) (deciding that lesser included offense instruction for assault should have been given in case alleging assault family violence by occlusion where there was evidence that defendant did not impede victim's breathing or circulation); *Isaac*, 167 S.W.3d at 472, 475 (concluding that trial court erred by failing to give lesser included offense instruction for deadly conduct in trial for aggravated assault where defendant did not deny going to shop with gun but did testify that he only intended to scare his family, that he held gun at his side and never pointed it at anyone, that gun went off when he was tackled by his stepbrother, and that he did not intend to hurt anyone but himself).

If an appellate court determines that there is error present in a jury charge, it must then evaluate the harm caused by the error. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). The amount of harm needed for a reversal depends on whether a complaint regarding "that error was preserved in the trial court." *Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd). If the defendant made a timely objection, as in this case, reversal is required if there has been "*some* harm." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). "In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless." *Id.*

In this type of analysis, reviewing courts "consider: (1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) other relevant factors

15

present in the record." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). Although the standard is less stringent than the analysis performed when an objection is not made, the reviewing court must still "find that the defendant 'suffered some actual, rather than merely theoretical, harm from the error.'" *Id.* (quoting *Warner v. State*, 245 S.W.3d 458, 463 (Tex. Crim. App. 2008)).

Although the abstract portion of the jury charge included an instruction on simple assault as well as aggravated assault and defined the terms "bodily injury" and "serious bodily injury," the application paragraph, as set out above, did not contain any instructions authorizing the jury to find Wade guilty of assault as opposed to aggravated assault. Courts have "routinely found" in circumstances where "a lesser included offense [instruction] . . . was requested and raised by the evidence" and where the failure to include that instruction "left the jury with the sole option either to convict the defendant of the greater offense or to acquit him" that "'some' harm" occurs from the failure to include the instruction. *Saunders v. State*, 913 S.W.2d 564, 571 (Tex. Crim. App. 1995); *see also Masterson v. State*, 155 S.W.3d 167, 171 (Tex. Crim. App. 2005) (explaining that "the harm from denying a lesser offense instruction stems from the potential to place the jury in the dilemma of convicting for a greater offense in which the jury has reasonable doubt or releasing entirely from criminal liability a person the jury is convinced is a wrongdoer"); *Ramirez*, 263 S.W.3d at 43 (finding "some harm" where "the absence of the lesser included offense instruction left the jury with the sole option either to convict the defendant of the charged offense or to acquit him").

In its brief, the State contends that any error in the jury charge was harmless. As support, the State notes that the jury charge contained instructions on the "Special Issue" of whether Wade used a deadly weapon during the assault. Specifically, the instruction directed the

16

jury to consider the issue if it found Wade guilty of aggravated assault causing serious bodily injury; included definitions for the terms "'[d]eadly weapon,'" "'[b]odily injury,'" and "'[s]erious bodily injury'"; and asked the jury to specify whether it found beyond a reasonable doubt that he "used or exhibited a deadly weapon, namely, the defendant's teeth, during the commission of the felony offense of Aggravated Assault Causing Bodily Injury." In light of the special-issue instructions, the State argues that the jury was free to find that he did not use a deadly weapon during the offense "and thereby inject an inference that they were harboring residual reasonable doubt" but instead chose to make the finding.

However, the special-issue definitions for serious bodily injury and bodily injury were the same as those included in the abstract portion of the jury charge. Moreover, the special-issue definition for "'[d]eadly weapon'" specified that a deadly weapon is "anything that in the manner of its use is capable of causing death or serious bodily injury," and the special-issue instruction directed the jury to make a deadly-weapon finding if it found that Wade "used or exhibited a deadly weapon" during the offense. In light of the fact that the same definition for "serious bodily injury" formed the basis for the conviction and for the deadly-weapon finding, we do not agree with the State's argument that the deadly-weapon finding made by the jury in this case shows that there was no harm from the failure to provide the lesser included instruction. In fact, during its closing argument, the State told the jury twice that if it found Wade guilty of the charged offense, the deadly-weapon issue was "necessarily" true. Accordingly, we conclude that the first factor weighs in favor of some harm.

Turning to the arguments of counsel, we note that during the State's opening argument, it asserted that Sughrue now has a "permanent disfigurement . . . because [Wade] bit" off part of his ear, but the State did not assert that the injury was a serious permanent

17

disfigurement. During the first portion of its closing argument, the State again characterized the injury as a permanent disfigurement but asserted during the second portion that the injury was a serious permanent disfigurement. In his closing argument, Wade emphasized that the State's characterizations of the injury omitted the term "serious," that the injury had to be a "serious" one to qualify as serious bodily injury, that none of the witnesses at trial described the injury as a "serious permanent disfigurement," that Sughrue did not use the word serious to describe his own injury, and that none of the treating physicians were called to the stand and, accordingly, did not provide any expert testimony regarding the severity of the injury. In light of the preceding, we conclude that the second factor also weighs in favor of a finding of some harm.

Regarding the evidence presented at trial, we note that although the evidence was legally sufficient to support an inference that the injury qualified as serious permanent disfigurement, the severity of the injury was one of the primary contested issues. Additionally, as Wade correctly points out, no witnesses, including Sughrue, used the word "serious" when describing the injury, and he testified that the injury was not serious and that he would not notice any difference between Sughrue's ears if he did not know of the injury. Accordingly, we believe that, on balance, the third factor either weighed in favor of some harm or was neutral regarding whether Wade suffered some harm.

Turning to the fourth factor, we note that although Wade was ultimately placed on community supervision when he was sentenced, the jury assessed his punishment at five years' imprisonment. That sentence is longer than the maximum sentence allowed for simple assault, *see* Tex. Penal Code § 22.01(b), which is, generally speaking, "confinement in jail for a term not to exceed one year," *see id.* § 12.21. Accordingly, we believe that this factor also weighs in favor of a finding of some harm. *See Hardeman*, 556 S.W.3d at 924 (determining that defendant

18

suffered some harm after noting that sentence assessed exceeded "maximum punishment" available for lesser included offense).

In light of our resolution of the factors set out above, we conclude that Wade suffered some harm from the denial of his request for a jury instruction. Therefore, having found error and some harm from that error, we sustain Wade's second issue on appeal. *See id.* (concluding that defendant suffered some harm from denial of instruction "on the lesser included offense of simple assault").

## CONCLUSION

Having overruled Wade's first issue but having sustained his second issue, we reverse the district court's judgment of conviction and remand the cause for a new trial.

_____
Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Kelly

Reversed and Remanded

Filed: January 16, 2020

Publish

19