**Motion for Rehearing Denied; Memorandum Opinion filed June 20, 2013 Withdrawn; Dismissed for Want of Jurisdiction (No. 14-12-00719-CR and No. 14-12-00728), Affirmed (No. 14-12-00718-CR), and Substitute Memorandum Opinion on Rehearing filed July 30, 2013.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-12-00718-CR**
**NO. 14-12-00719-CR**
**NO. 14-12-00728-CR**

---

**WILBURT DWAINE CASH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 240th District Court**
**Fort Bend County, Texas**
**Trial Court Cause Nos. 11-DCR-056924A, 11-DCR-056925A,**
**11-DCR-056926A**

---

## S U B S T I T U E   M E M O R A N D U M   O P I N I O N   O N   R E H E A R I N G

We deny appellant Wilburt Dwaine Cash's motion for rehearing, withdraw our previous memorandum opinion, vacate our previous judgment, and issue this Substitute Memorandum Opinion on Rehearing and a new judgment.

In three separate appeals, appellant contends the evidence is legally insufficient to support his convictions for (1) aggravated sexual assault (14-12-00718-CR), (2) aggravated kidnapping (14-12-00719-CR), and (3) aggravated assault committed on or about March 6, 2011 (14-12-00728-CR).[1] We dismiss for want of jurisdiction cause numbers 14-12-00719-CR and 14-12-00728-CR and affirm the trial court's judgment in cause number 14-12-00718-CR.

## I. BACKGROUND

In September 2010, appellant and his girlfriend, the complainant, were at the complainant's house. While they were in the bathroom, appellant accused the complainant of infidelity and began questioning her. Appellant poured bleach and lighter fluid on the complainant, burning her arms and chest. The next day, the complainant went to the hospital for treatment. Police officers questioned her at the hospital. She was initially uncooperative but eventually indicated appellant had assaulted her. Officers arrested appellant later that day. Appellant was released from custody after posting bond.

In March 2011, appellant and the complainant were again together in the bathroom of her house when appellant accused her of infidelity. Appellant had the complainant sit in a chair and taped her legs to the chair legs and her arms behind her back. The complainant testified she did not "put up a fight" because she knew appellant would overpower her. While questioning the complainant, appellant struck her feet with a mallet. Appellant used pliers to repeatedly grab the complainant's nipples, causing wounds. He then penetrated the complainant's vagina with pliers, using them to grab her clitoris. Appellant continued to question

---

[1] Appellant has also appealed three other related convictions in cause numbers 14-12-00715-CR, 14-12-00716-CR, and 14-12-00720-CR. We do not address the merits of these appeals in this opinion.

2

the complainant and turned on a clothes iron. He used the iron to burn the complainant's chest and legs. The complainant freed her hands and wrestled with appellant. During the struggle, she was burned several more times. Eventually, appellant ceased torturing the complainant in the bathroom, and they went to the bedroom where he forced her to have sex with him.

The next morning, the complainant went to the hospital for treatment. The complainant informed medical personnel about her torture, including that appellant had used pliers to grab her sexual organ. Officers questioned the complainant at the hospital. She stated appellant had caused her injuries but "that she loved him, and she wanted to work it out with him."

Thereafter, officers arrested appellant, and he was ultimately charged with six separate felonies. Regarding the three felonies relevant to this appeal, appellant pleaded guilty without sentence recommendations to aggravated kidnapping and aggravated assault committed on or about March 6, 2011 and not guilty to aggravated sexual assault. After a bench trial, the trial court found appellant guilty of aggravated sexual assault. Appellant was sentenced to fifteen years' imprisonment for aggravated kidnapping, fifteen years' imprisonment for aggravated assault, and life imprisonment for aggravated sexual assault (sentences to run concurrently).[2]

---

[2] In the other three felony cases which are not part of this appeal, appellant was charged with tampering with a witness committed on or about March 11, 2011, tampering with a witness committed on or about March 12, 2011, and aggravated assault committed on or about September 12, 2010. Appellant pleaded guilty to these charges without sentence recommendations and was sentenced to imprisonment for two years, two years, and fifteen years, respectively, to run concurrently with his other three sentences.

## II. OFFENSES TO WHICH APPELLANT PLEADED GUILTY

In cause numbers 14-12-00719-CR and 14-12-00728-CR, appellant contends the evidence is legally insufficient to support his convictions for aggravated kidnapping and aggravated assault. However, we first must address the State's argument that appellant waived his right to appeal these convictions.

A valid waiver of appeal will prevent a defendant from appealing without the consent of the trial court. *See Ex parte Broadway*, 301 S.W.3d 694, 697 (Tex. Crim. App. 2009). For a defendant's waiver of appeal to be valid, it must be made voluntarily, knowingly, and intelligently. *Id*. For a defendant's presentencing waiver of appeal to be valid, it must be part of a plea bargain agreement or the State must give the defendant consideration for the waiver. *Id.*; *see also Washington v. State*, 363 S.W.3d 589, 589–90 (Tex. Crim. App. 2012) (per curiam).

Appellant did not plead guilty in these causes pursuant to a plea bargain agreement or in exchange for the State recommending a sentence. Nonetheless, we conclude appellant received consideration for his waivers. In the aggravated kidnapping cause, the State stipulated the complainant was safely released, reducing the punishment range to a second-degree felony. In the aggravated assault cause, the State agreed to drop its "serious bodily injury" allegation, reducing the crime to a second-degree felony. We conclude the State gave appellant consideration for his waivers of appeal and that appellant voluntarily, knowingly, intelligently, and validly waived his right to appeal in these cases. *See Broadway*, 301 S.W.3d at 697.

There is language in the trial court's Rule 25.2(a)(2) certifications indicating the trial court gave appellant permission to appeal "as to punishment, only." *See* Tex. R. App. P. 25.2(a)(2) (requiring trial court to enter certification of defendant's

4

right to appeal). Presuming, without deciding, that the trial court gave appellant permission to appeal as to assessment of punishment, the trial court did not give appellant permission to appeal as to non-punishment issues. Appellant has not challenged the trial court's assessment of punishment. In these two appeals, appellant challenges only the sufficiency of the evidence supporting the trial court's determination of guilt. Appellant has validly waived his right to appeal the trial court's determination of guilt in these two cases. Accordingly, we dismiss for want of jurisdiction cause numbers 14-12-00719-CR and 14-12-00728-CR.

## III. AGGRAVATED SEXUAL ASSAULT

In cause number 14-12-00718-CR, appellant contends the evidence is legally insufficient to support his conviction for aggravated sexual assault. Appellant pleaded not guilty to this charge, and the trial court found him guilty after a bench trial. Thus, we review sufficiency of the evidence under the familiar *Jackson* standard. *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979).

Under the *Jackson* standard, we view all of the evidence in the light most favorable to the verdict and determine, based on the evidence and any reasonable inferences therefrom, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson*, 443 U.S. at 318–19). We do not sit as a thirteenth juror and may not substitute our judgment for that of the fact finder by re-evaluating weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Rather, we defer to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.*

To convict appellant of aggravated sexual assault as charged in the indictment, the State had to prove beyond a reasonable doubt that appellant

intentionally or knowingly caused the penetration of the complainant's sexual organ by pliers without her consent and, in the course of the same criminal episode, used or exhibited a deadly weapon, specifically pliers or an iron. *See* Tex. Penal Code Ann. § 22.021(a)(1)(A)(i), (a)(2)(A)(iv) (West Supp. 2011).

### 1. Penetration

Appellant first argues the evidence is insufficient to prove he penetrated the complainant's sexual organ with pliers. Appellant correctly notes the complainant initially testified appellant did not penetrate her vagina. However, the complainant subsequently testified appellant did penetrate the outer lips of her vagina with the pliers. The trial court acted reasonably by resolving this evidentiary conflict against appellant, and we must defer to this resolution. *See Isassi*, 330 S.W.3d at 638. Appellant also argues the complainant lacked credibility because, although she testified at trial regarding this penetration, she admitted testifying at a protective hearing that appellant did not sexually assault her. Again, we must defer to the trial court's finding that the complainant was truthful when she testified appellant penetrated her vagina. *Id.* It was reasonable for the trial court to believe the complainant's trial testimony, instead of her earlier testimony, because she explained it was emotionally difficult for her to discuss the assault at the protective hearing. The evidence is legally sufficient to support a finding appellant penetrated the complainant's sexual organ with pliers.

### 2. Consent

Appellant next argues the evidence is insufficient to prove he penetrated the complainant's sexual organ with pliers "without the consent of [the complainant]." The Penal Code lists eleven situations in which a sexual assault is without the consent of the complainant. *See* Tex. Penal Code Ann. §§ 22.021(c), 22.011(b) (West 2011). Appellant apparently argues the State was limited to proving lack of

6

consent pursuant to three of the eleven situations, specifically those pertaining to use, or threat of use, of force or violence. *See id.* §§ 22.021(c), 22.011(b)(1), (2), (7). Appellant also asserts that, under the indictment, the State could establish lack of consent only by proving appellant "compelled [the complainant] to submit or to participate by using or exhibiting a deadly weapon, to-wit: pliers or an iron." However, the indictment does not allege any specific lack-of-consent situation. Thus, contrary to appellant's arguments, the State could establish lack of consent under any of the eleven situations supported by the evidence, including the situation in which "the other person has not consented and the actor knows the other person is unconscious or physically unable to resist." *See id.* § 22.011(b)(3). We will review sufficiency of the evidence pertaining to this lack-of-consent situation.

Appellant asserts the complainant testified she did not defend herself during the attack. However, the complainant testified she did not initially defend herself because she knew appellant would overpower her. Appellant also argues that evidence the complainant did not want to press charges against him negates lack of consent. However, the trial court could have rationally found the complainant did not want to press charges because appellant asked her not to, she was romantically involved with appellant, and she had two children with him—not because she consented to the sexual assault. The complainant testified appellant squeezed her clitoris with pliers while she was taped to a chair and being accused of infidelity. The evidence is clearly sufficient to support a finding beyond a reasonable doubt that the complainant did not consent to appellant's sexual assault and appellant knew she was physically unable to resist.

7

### 3. Deadly Weapon

Finally, appellant argues the evidence is insufficient to prove he used or exhibited a deadly weapon, namely pliers or an iron, in the course of the same criminal episode as the sexual assault. A "criminal episode" commences when the attacker in any way restricts the victim's freedom of movement and ends with the final release or escape of the victim from the attacker's control; use or exhibition of a deadly weapon at any time during this period will elevate the crime to an aggravated status. *Burns v. State*, 728 S.W.2d 114, 116 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd). "Exhibit" means "consciously shown, displayed, or presented to be viewed." *Coleman v. State*, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004).

"Deadly weapon" may be "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17)(B) (West Supp. 2012). "Serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46).

The State is not required to show the "use or intended use causes death or serious bodily injury" but that the "use or intended use is *capable* of causing death or serious bodily injury." *Tucker v. State*, 274 S.W.3d 688, 691–92 (Tex. Crim. App. 2008). We evaluate the alleged deadly weapon's capability to cause death or serious bodily injury in light of the facts that actually existed at the time of the offense. *Romero v. State*, 331 S.W.3d 82, 83 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). Relevant factors include (1) the words of the accused, (2) the intended use of the weapon, (3) the size and shape of the weapon, (4) testimony by the victim that she feared death or serious bodily injury, (5) the severity of any

8

wounds inflicted, (6) the manner in which the assailant allegedly used the object, (7) physical proximity of the parties, and (8) testimony as to the weapon's potential for causing serious bodily injury. *Id.*

Appellant restricted the complainant's freedom when he taped her to a chair. After sexually assaulting the complainant, appellant produced the iron, plugged it in, and repeatedly used it to burn her. Thus, appellant exhibited the iron during the same criminal episode as the sexual assault. *See Quincy v. State*, 304 S.W.3d 489, 493, 497–98 (Tex. App.—Amarillo 2009, no pet.) (holding evidence sufficient to support finding defendant used or exhibited deadly weapon, his hand, in course of same criminal episode as sexual assault even though he punched and choked victim before sexual assault occurred).

Additionally, the evidence supports the trial court's finding that the iron was a deadly weapon. In the course of appellant's four-hour torture of the complainant, appellant produced and plugged in an iron. Although the complainant initially testified her burns occurred when she was grappling with appellant, she later admitted appellant intentionally used the iron to burn her chest, thighs, and groin area. At some point, the complainant freed herself from the tape and began physically struggling with appellant. During the struggle, appellant continued to hold the iron, and the complainant was burned on her arms several times as she attempted to push away the iron. The complainant also fell on the floor, and as she was "tr[ying] to get up, . . . [appellant] dropped that iron," causing a large burn on the back of her thigh. The nurse who treated the complainant told officers, "[Y]ou could see where [the complainant] would try and close her legs from being burned and the groin area had several burns." When asked at trial about the status of her burns, the complainant testified, "They're better now."

9

Emergency room personnel requested the consult of a plastic surgeon because of the extent of the complainant's burns. The plastic surgeon testified the complainant suffered "traumatic skin loss" and was likely to have "keloid" scars, but the burns were only "partial thickness," meaning they did not "enter the fat." Nevertheless, he explained it was important the complainant receive treatment for her burns because of the risk of serious infection, which could result in amputation or death. At the time he assessed the complainant's condition, the plastic surgeon believed medicated cream would adequately treat her burns. However, he could not determine the extent of the injuries so soon after they were sustained and was concerned skin grafting may be necessary.[3] According to the plastic surgeon, the complainant was "lucky" because the iron was placed on areas of her body covered with thick skin, where burns are most likely to heal; had the iron been touched to other areas of the complainant's body, such as her eyelids, the iron would have been capable of causing "extensive damage, permanent damage," such as blindness in the case of an eyelid. Moreover, the plastic surgeon testified that, had the iron contacted the complainant's skin for a longer period of time, the burns would have extended to the fat, likely necessitating reconstructive surgery. Finally, the plastic surgeon opined the iron did not cause more serious injuries because the complainant probably jerked away when the iron touched her.

The foregoing evidence is sufficient to support a finding the iron was a deadly weapon. Appellant's use of the iron to torture the complainant, his continued brandishing of the iron while struggling with the complainant, and his dropping the iron onto the complainant's thigh while she was on the floor support a finding appellant's use or intended use of the iron was capable of causing serious permanent disfigurement. *See* Tex. Penal Code Ann. § 1.07(a)(17)(B), (a)(46).

---

[3] The complainant did not attend a scheduled follow-up appointment with the plastic surgeon.

For example, when appellant dropped the iron onto the complainant's thigh, it was capable of causing a deep burn necessitating reconstructive plastic surgery. Without such surgery, the burn would have been permanently disfiguring. *See Sizemore v. State*, 387 S.W.3d 824, 828 (Tex. App.—Amarillo 2012, pet. ref'd) ("[It is a] well-established rule that the relevant issue is the disfiguring effect of the bodily injury *as it was inflicted*, not after the effects had been ameliorated or exacerbated by other actions such as medical treatment."); *Tinker v. State*, 148 S.W.3d 666, 671 n.3 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding diagnosis that injury may result in permanent deformity without proper treatment sufficient to meet the definition of serious bodily injury).

Accordingly, we hold the evidence is legally sufficient to support appellant's conviction of aggravated sexual assault. We overrule appellant's issue in cause number 14-12-00718-CR.[4]

## IV. CONCLUSION

We dismiss for want of jurisdiction cause numbers 14-12-00719-CR and 14-12-00728-CR and affirm the trial court's judgment in cause number 14-12-00718-CR.


/s/    John Donovan
        Justice


Panel consists of Justices Frost, Jamison, and Donovan.

Do Not Publish — Tex. R. App. P. 47.2(b).

---

[4] Appellant also appears to argue the evidence is insufficient to prove he placed the complainant in fear of serious bodily injury during the sexual assault. However, appellant was not charged with having placed the complainant in fear of serious bodily in injury. Thus, the State did not need to prove this as an element of the offense.