

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0157-20

**ROBERT ERIC WADE, III, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRD COURT OF APPEALS
### WILLIAMSON COUNTY

**SLAUGHTER, J., filed a dissenting opinion.**

## DISSENTING OPINION

I would hold that losing the entirety of a named body part (here, an earlobe) because of an assault constitutes "serious permanent disfigurement" *per se*. Because the Court holds instead that the seriousness aspect of "serious permanent disfigurement" under the facts of this case is a fact issue, I respectfully dissent.

It was uncontested that Appellant bit off the entire earlobe of Taylor Sughrue. Based on that conduct, he was charged with and tried for aggravated assault causing serious bodily injury.[1] At trial, Appellant conceded that he caused Sughrue permanent disfigurement but claimed that such disfigurement was not "serious," such that he was entitled to a jury instruction on the lesser-included offense of regular assault. In asserting his entitlement to the lesser-included instruction, Appellant relied on his own conclusory testimony opining that this injury was not "serious." The majority opinion adopts this position and holds that this testimony constitutes some evidence from which the jury could have rationally determined that Sughrue's injury was not serious. I respectfully disagree.

First, I would hold that where there is an assault and it is uncontested that as a result of the assault the victim suffered permanent loss of a named body part, then such loss is "serious permanent disfigurement" *per se* which prohibits the giving of a lesser-included-offense instruction for regular assault. Second, even if the Court declines to adopt this bright-line rule, in this case Appellant's conclusory statement that the victim's bodily injury was not "serious" does not satisfy the second step of the lesser-included offense analysis. That conclusory testimony issuing a blanket denial of the seriousness of the victim's injury does not rationally refute the fact evidence showing that the victim's disfigurement was both serious and permanent. Thus, regular assault was not a valid, rational alternative to the charged aggravated assault. On either of these bases, I would

---

[1] *See* TEX. PENAL CODE §§ 22.02(a)(1) (defining offense of aggravated assault for causing serious bodily injury); 1.07(a)(46) (defining serious bodily injury as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ").

reverse the judgment of the court of appeals granting Appellant a new trial and affirm the trial court's judgment of conviction.

## I.    Background

The relevant facts are not materially in dispute. Appellant went to the home of his ex-wife and became involved in a physical altercation with her new boyfriend, Taylor Sughrue. During the fight, Appellant bit off Sughrue's earlobe, which was later found on the floor of the bedroom where the assault took place. Although efforts were made to reattach the earlobe, such efforts were unsuccessful and Sughrue's earlobe was permanently amputated.[2]

The State charged Appellant with aggravated assault for causing serious bodily injury to Sughrue. *See* TEX. PENAL CODE § 22.02(a)(1). Serious bodily injury is an injury that "creates a substantial risk of death or that causes death," causes "serious permanent disfigurement," or results in the "protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46). At trial the State relied on the second manner of proving serious bodily injury—that Appellant caused Sughrue serious permanent disfigurement.

Although Appellant's primary defense at trial was self-defense, he also made conclusory statements during his testimony on cross-examination asserting that Sughrue's injury was not serious:

---

[2] Regarding the size of the injury, Sughrue's medical records showed that the wound was ten centimeters long and was a "large complex laceration" resulting in "loss of the earlobe." The injury extended into the cartilage and required eleven stitches.

Q: Would you agree with me that you caused serious bodily injury to [Sughrue]?[3]

A: No.

Q: You don't agree with me?

A: No.

Q: You agree with me that on July 16th of 2016 . . . when [Sughrue] went to Christina's house, he had two earlobes?

A: Yes.

Q: And you would agree with me that after you left and you bit it off, the earlobe, he then had only one earlobe?

A: Yes.

Q: Okay. And you would agree with me that he is now disfigured?[4]

A: Yes.

Q: So you would agree with me that you are guilty of biting off [Sughrue's] ear on purpose, correct?

A: No.

Q: Okay. You would agree with me that you used your teeth?

A: Yes.

Q: That's the mechanism by which his earlobe was detached from his head, correct?

A: Yes.

Q: And you would agree with me that that caused serious bodily injury?

A: No.

---

[3] At this point, defense counsel objected that the prosecutor's question asked for Appellant's opinion on "a legal fact for the jury." The trial court overruled the objection.

[4] Defense counsel again objected here, asserting that the question was "a matter to be decided by the jury." The court again overruled the objection.

On re-direct, Appellant then qualified his earlier testimony by suggesting that he had no medical basis for opining that Sughrue was disfigured. He also suggested that, in his opinion, Sughrue's injury would not be noticeable to the average person walking down the street:

Q:     The prosecutor asked you if you believe that biting off [Sughrue's] lower part of his earlobe was disfigurement, and your testimony was yes. What medical basis are you basing that on?

A:     None. I don't know.

Q:     If you saw [Sughrue] walking down the street, not knowing who he was, would you even notice the discrepancy in his ears?

A:     No.

Based on this testimony, Appellant contends that the jury could have rationally concluded that he was guilty only of assault because he did not cause the victim *serious* permanent disfigurement as is required to establish the element of serious bodily injury.

## II.     Analysis

The evidence was undisputed that as a result of Appellant's actions, the victim's earlobe was completely severed and was unable to be reattached. If a doctor had been able to reattach the earlobe, then any resulting scar might create a fact issue as to whether the disfigurement was "serious."[5] But the permanent loss of an entire named body part also

---

[5] It is true that we generally evaluate serious bodily injury by looking to the nature of the injury at the time that it was inflicted, rather than after medical treatment. *See Blea v. State*, 483 S.W.3d 29, 34-35 (Tex. Crim. App. 2016) (holding that a court should "consider[ ] the disfiguring and impairing quality of the bodily injury as it was inflicted on a complainant by an offender"). However, *Blea* was a case analyzing the sufficiency of the evidence to show a substantial risk of death or the impairment of the function of a bodily organ; it did not directly address cases involving "serious permanent disfigurement." *See* TEX. PENAL CODE § 1.07(a)(46). The requirement that disfigurement be "permanent" suggests that it would be appropriate to look to the appearance of an injury after it has healed, including any permanent scarring. In any event, because it is

forever prevents the use of that body part, which also goes to the jury's consideration of the seriousness aspect of disfigurement. Here, an earlobe can be used for self-expression (i.e., earrings). A person may like to kiss or nibble a partner's earlobe as a sign of intimacy. The earlobe is also right next to a person's face such that it is usually visible to the public. Moreover, where, as here, there are two identical body parts, the loss of one changes one's symmetrical appearance.



Thus, while the "seriousness" aspect of "serious permanent disfigurement" is usually a fact issue for the State to prove and the jury to decide based on the evidence, because it is undisputed that the assault here caused the permanent loss of the victim's

---

undisputed here that the earlobe could not be reattached in spite of medical treatment, I need not address this matter further.

earlobe, I would hold that such loss constitutes "serious permanent disfigurement" *per se*.[6] Accordingly, Appellant was not entitled to a lesser-included-offense instruction on simple assault because, as a matter of law, no evidence could rationally negate the aggravating element.

In addition, even assuming that such a bright-line rule would not apply, Appellant's position fails because his self-serving testimony denying that the injury was serious and opining that a person walking down the street would not notice the injury did nothing to logically refute the seriousness of the permanent disfigurement. Under the second step of the lesser-included-offense analysis, a defendant is entitled to an instruction if there is some evidence that would permit a jury to *rationally* find that if the defendant is guilty, he is guilty only of the lesser-included offense. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011). There must be some evidence "directly germane" to the lesser-included offense before an instruction is warranted, and the lesser offense must be shown to be a valid, rational alternative to the charged offense. *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011). Further, we have said that a defendant is entitled to a lesser-included-

---

[6] Indeed, courts have frequently recognized that this type of injury (and similar injuries affecting the face) meet the definition for permanent serious disfigurement. *See, e.g., Sizemore v. State*, 387 S.W.3d 824, 829 (Tex. App.—Amarillo 2012, pet. ref'd) (finding injury to ear requiring reconstructive surgery sufficient to support finding of serious permanent disfigurement); *State v. Carothers*, No. C7-98-242, 1998 WL 695021 (Minn. Ct. App. 1998) (unpublished op.) (concluding that victim suffered serious permanent disfigurement as a result of "severe facial injuries, including surgery to reattach his left earlobe, and [a] lost [ ] patch of his hair"); *State v. Blumke*, No. C8-93-1042, 1994 WL 85799 (Minn. Ct. App. 1994) (holding evidence sufficient to establish serious permanent disfigurement where defendant bit off one third to one half of the victim's ear); *People v. Wade*, 187 A.D.2d 687 (N.Y. Ct. App. 1992) (mem. op.) (holding that injury resulting in scar from cheek to ear met requirement for serious permanent disfigurement); *State v. Wells*, No. C4-98-5, 1998 WL 612917 (Minn. Ct. App. 1998) (stating, with respect to scar on forehead, "[b]ecause of its size and high visibility, the scar constitutes serious permanent disfigurement").

offense instruction if "some evidence refutes or negates other evidence establishing the greater offense or if the evidence presented is subject to different interpretations." *Id.*

The only contested issue here was whether the injury was sufficiently "serious" to constitute a "serious permanent disfigurement." The jury had the opportunity to observe the victim in person at the time of trial and could evaluate for itself whether the disfigurement was indeed "serious." Even assuming that this presented a question of fact for the jury under these circumstances, it was one that the jury could evaluate using its own commonsense knowledge. *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (finding that in evaluating serious permanent disfigurement, "[t]he jury was free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence"). Appellant's testimony did nothing to undermine or refute the evidence clearly giving rise to an affirmative finding of serious permanent disfigurement here. In his testimony on cross-examination, Appellant opined that Sughrue's bodily injury was not "serious." But the relevant factual question is not whether the *injury* was serious, but rather whether the *disfigurement* was serious. The simple fact that Sughrue's injury was not life-threatening or severe enough to require prolonged medical treatment does not mean that the resulting disfigurement was not serious. Thus, Appellant's conclusory opinion that Sughrue was not seriously injured is not directly germane to the question of serious permanent disfigurement.

But even assuming that this testimony could have been construed by the jury as expressing an opinion as to the lack of serious permanent disfigurement, I still disagree

that it could have rationally supported a negative finding on that statutory element. While it is generally true that a defendant's testimony may raise the issue of a lesser-included offense, this Court has never to my knowledge held that a defendant's testimony merely opining that some statutory element is not satisfied is alone enough to entitle him to a lesser-included-offense instruction. Here, Appellant did not have any particularized knowledge or awareness of facts about Sughrue's injuries beyond what was already clearly visible to the jury. And, as I have noted above, the jury was free to assess Sughrue's serious permanent disfigurement based on its own commonsense knowledge and perceptions. In this context, Appellant's conclusory opinion that the victim's injury was not "serious" does not constitute any factual evidence at all about the nature of Sughrue's disfigurement. Rather, Appellant's testimony was offering a legal conclusion that the element of serious bodily injury was not satisfied.[7] This is not the type of "evidence" we are referring to when we speak of "some evidence" to support the giving of a lesser-included-offense instruction.

For similar reasons, I also disagree that Appellant's testimony that he would not notice Sughrue's injury if he saw him walking down the street entitles Appellant to the lesser-included-offense instruction here. Like the testimony discussed above, Appellant's subjective opinion that Sughrue's disfigurement was not noticeable constitutes no evidence at all about whether the disfigurement was in fact serious. The jury was free to apply its own judgment to the objective question of whether Sughrue suffered serious permanent disfigurement and could evaluate that question based on its own first-hand perceptions of

---

[7] *See, e.g.*, *Kulms v. Jenkins*, 557 S.W.2d 149, 152 (Tex. App.—Amarillo 1977, writ ref'd n.r.e.) (distinguishing between fact testimony and testimony offering a legal conclusion, which has no "probative value").

the injury. Appellant's personal opinion about that matter could not reasonably aid in the jury's assessment of that question, and therefore fails to provide a rational basis for the jury to conclude that there was no serious permanent disfigurement here.

## III.    Conclusion

In sum, in considering the issues before us in this case, I would adopt a bright-line rule that the permanent loss of a named body part as a result of an assault constitutes "serious permanent disfigurement." Therefore, based on this bright-line rule, I would hold that as a matter of law Appellant was not entitled to a lesser-included-offense instruction on simple assault.

Alternatively, I would hold that, given the circumstances, the jury could not have rationally relied on Appellant's testimony to find that the amputation of the victim's earlobe was anything less than "serious permanent disfigurement" for purposes of finding "serious bodily injury." Therefore, assault was not a valid, rational alternative to the charged aggravated assault, and Appellant was not entitled to the lesser-included-offense instruction. I would therefore reverse the judgment of the court of appeals and affirm the trial court's judgment of conviction. Because the Court concludes otherwise, I respectfully dissent.

FILED: April 6, 2022
PUBLISH