PD-0245-15

PD-0245-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/16/2015 3:43:13 PM
Accepted 4/21/2015 11:26:39 AM
ABEL ACOSTA
CLERK

IN THE
COURT OF CRIMINAL APPEALS OF TEXAS
AUSTIN, TEXAS

| | | |
|---|---|---|
| JUAN BLEA, | § | |
| Appellant | § | |
| v. | § | No. PD-0245-15 |
| THE STATE OF TEXAS, | § | |
| Appellee | § | |

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
AND CROSS PETITION FOR DISCRETIONARY REVIEW**

FROM THE DECISION OF THE COURT OF APPEALS FOR THE SECOND
APPELLATE DISTRICT OF TEXAS, FORT WORTH, IN CAUSE NUMBER
02-13-00221-CR, *JUAN BLEA V. THE STATE OF TEXAS*, AND
FROM THE 362ND JUDICIAL DISTRICT COURT, DENTON COUNTY, TEXAS, THE
HONORABLE BRUCE MCFARLING, JUDGE PRESIDING, AND, AS SITTING
JUDGE, THE HONORABLE SHERRY SHIPMAN FROM THE 16TH JUDICIAL
DISTRICT COURT, DENTON COUNTY, TEXAS.

FILED IN
COURT OF CRIMINAL APPEALS

April 21, 2015

ABEL ACOSTA, CLERK

DAWN A. MOORE
Texas State Bar No. 00788072
BOSWELL & MOORE, P.C.
1504 EAST MCKINNEY STREET,
SUITE 200
DENTON, TEXAS 76209
(940) 382-4711
(940) 349-9922 (FAX)
dawn@boswellandmoore.com

## IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of the parties and persons interested in the outcome of this cause:

(A)   Juan Blea, Appellant

      11700 Lebanon Drive, Apt. 1111
      Frisco, Texas 75035

(B)   Denver McCarty and Leah Harbour, counsel for Appellant at trial

      1512 East McKinney Street, Suite 200
      Denton, Texas  76209

(C)   Dawn A. Moore, counsel for Appellant on appeal

      1504 East McKinney Street, Suite 200
      Denton, Texas  76209

(D)   The State of Texas, by and through Paul Johnson, Denton County Criminal District Attorney; and Catherine Luft, Andrea Simmons, Dustin Gossage, and Michael Graves, Assistant Criminal District Attorneys

      1450 East McKinney
      Denton, Texas  76209

(E)   Lisa C. McMinn, State Prosecuting Attorney

      209 West 14th Street, Suite 203
      P.O. Box 13046
      Austin, Texas  78711-3046

(F)     Honorable Bruce McFarling, Presiding Judge for the 362nd Court

        Denton County Courts Building
        1450 East McKinney Street, 3rd Floor
        Denton, Texas  76209-4524

(G)     Honorable Sherry Shipman, as Sitting Judge for the 362nd Court

        Denton County Courts Building
        1450 East McKinney Street, 3rd Floor
        Denton, Texas  76209-4524

# TABLE OF CONTENTS

**PAGE**

IDENTITY OF PARTIES AND COUNSEL ................................................................. i-ii

INDEX OF AUTHORITIES .................................................................................. iv-v

STATEMENT REGARDING ORAL ARGUMENT .......................................................... 2

STATEMENT OF THE CASE ................................................................................... 2

STATEMENT OF PROCEDURAL HISTORY ................................................................ 3

QUESTION PRESENTED FOR REVIEW .................................................................... 3

> Did the Court of Appeals perform the complete and proper analysis necessary to reach a conclusion on the legal sufficiency of whether Appellant's hand had more than merely a hypothetical capability of causing death or serious bodily injury in the manner of its use or intended use in this assault, such that it constituted a deadly weapon?

ARGUMENT .......................................................................................................... 4

    Evidence Recited in the Court's Opinion ................................................ 4

    Recited Analysis/Conclusion in the Court's Opinion ............................ 5

    Relevant Law and Applicable Factors ................................................... 5

    Missing Analysis in the Court's Opinion .............................................. 7

    Conclusion .............................................................................................. 9

PRAYER .............................................................................................................. 10

CERTIFICATE OF COMPLIANCE ........................................................................... 10

CERTIFICATE OF SERVICE .................................................................................. 11

APPENDIX

    *Blea v. State*, 2015 WL 510954, at *1 (Tex. App.—Fort Worth 2015, pet. filed)

# INDEX OF AUTHORITIES

**Statutes, Codes, And Rules**                                                **Page**

Tex. Penal Code § 1.07(17)(B) ...................................................................................... 5

**Cases**

*Bailey v. State*
    46 S.W.3d 487 (Tex. App.—Corpus Christi 2001, pet. ref'd) ................................ 6

*Baltazar v. State*
    331 S.W.3d 6 (Tex. App.—Amarillo 2010, pet. ref'd) ............................................. 5

*Blea v. State*
    2015 WL 510954 (Tex. App.—Fort Worth 2015, pet. filed) ................................. 3

*Brown v. State*
    716 S.W.2d 939 (Tex. Crim. App. 1986) ................................................................. 6

*Dominique v. State*
    598 S.W.2d 285 (Tex. Crim. App. 1980) ................................................................. 6

*Drichas v. State*
    175 S.W.3d 795 (Tex. Crim. App. 2005) ................................................................. 5

*Hill v. State*
    913 S.W.2d 581 (Tex. Crim. App. 1996) ................................................................. 7

*Jefferson v. State*
    974 S.W.2d 887 (Tex. App.—Austin 1998, no pet.) ............................................... 7

*Johnston v. State*
    115 S.W.3d 761 (Tex. App.—Austin 2003),
    *aff'd*, 145 S.W.3d 215 (Tex. Crim. App. 2004) .................................................... 7

*Judd v. State*
    923 S.W.2d 135, 14 (Tex. App.—Fort Worth 1996, pet. ref'd) ............................ 6

*Kennedy v. State*
   402 S.W.3d 796 (Tex. App.—Fort Worth 2013, no pet. h.) .................................. 6

*Lozano v. State*
   860 S.W.2d 152 (Tex. App.—Austin 1993, pet. ref'd) .............................................. 6

*Romero v. State*
   331 S.W.3d 82 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) .................... 6

*Slaton v. State*
   685 S.W.2d 773 (Tex. App.—Houston [1st Dist.] 1985, pet. ref'd) ..................... 6

*Williams v. State*
   235 S.W.3d 742 (Tex. Crim. App. 2007) ........................................................................ 9

## IN THE
## COURT OF CRIMINAL APPEALS OF TEXAS
## AUSTIN, TEXAS

JUAN BLEA,                            §

    Appellant                   §

    v.                               §            No. PD-0245-15

THE STATE OF TEXAS,           §

    Appellee                      §

---

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## AND CROSS PETITION FOR DISCRETIONARY REVIEW

---

**TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:**

COMES NOW JUAN BLEA, hereinafter referred to as Appellant, by and through his attorney of record, DAWN A. MOORE, and pursuant to Rule 68 of the Texas Rules of Appellate Procedure, files this PETITON FOR DISCRETIONARY REVIEW AND CROSS PETITION FOR DISCRETIONARY REVIEW and, for such Petition, would show this Court as follows.

## STATEMENT REGARDING ORAL ARGUMENT

The State did not request oral argument in its Petition for Discretionary Review. The issue presented in this Petition/Cross Petition for Review is not a novel one. Appellant concurs that this Court can resolve either or both Petitions without oral argument and does not request argument barring a determination by this Court that argument would be helpful.

## STATEMENT OF THE CASE

Appellant was convicted of the first-degree felony of Aggravated Assault of a Family Member. The jury assessed his punishment at five years confinement. On appeal Appellant challenged the legal sufficiency of evidence regarding both the element of serious bodily injury and the element of use of a deadly weapon. Holding that the evidence was insufficient to show that Appellant caused serious bodily injury, but sufficient to show that he used his hand as a deadly weapon, the Second Court of Appeals reversed and remanded with instructions to (1) modify the judgment to reflect a conviction for the lesser-included second-degree felony aggravated assault and (2) conduct a new trial on punishment for the second-degree felony. This Petition seeks review of the portion of the opinion overruling Appellant's challenge to the legal sufficiency of the deadly weapon element of this offense.

## STATEMENT OF PROCEDURAL HISTORY

The Second Court of Appeals issued its opinion reversing and remanding for modification as well as a new punishment trial on a lesser-included offense on February 5, 2015. *Blea v. State*, 2015 WL 510954, at *1 (Tex. App.—Fort Worth 2015, pet. filed) (Appendix). Chief Justice Livingston issued a dissenting opinion. No motion for rehearing was filed by either party. The due date to file a Petition for Discretionary Review in this cause was March 6, 2015. The State filed its Petition for Discretionary Review on March 13, 2015. Appellant filed his *First Motion to Extend the Time for Filing the Appellant's Petition for Discretionary Review* on March 19, 2015. This Court granted Appellant's requested extension and ordered his Petition timely filed on or before April 22, 2015.

## QUESTION PRESENTED FOR REVIEW

Did the Court of Appeals perform the complete and proper analysis necessary to reach a conclusion on the legal sufficiency of whether Appellant's hand had more than merely a hypothetical capability of causing death or serious bodily injury in the manner of its use or intended use in this assault, such that it constituted a deadly weapon?

**ARGUMENT**

The Second Court of Appeals devoted only two paragraphs of its sixteen-page opinion to addressing the deadly weapon "portion" of Appellant's legal sufficiency challenge. *Blea v. State*, 2015 WL 510954, at *5-6 (Appendix). In undertaking its analysis, it seems the Court of Appeals overlooked fully considering all of the necessary factors essential to conducting a proper legal sufficiency review of whether Appellant's hand was, in the manner of its use or intended use, a deadly weapon. Appellant contends that a complete evaluation of those factors would have led the Court to correctly conclude that there was legally insufficient evidence to support anything beyond the "hypothetical capability" that Appellant's hand could cause death or serious bodily injury.

**Evidence Recited In The Court's Opinion**

In its Opinion the Second Court of Appeals recited "testimony touching on whether Appellant's hand was a deadly weapon in the manner of its use or intended use". *Blea v. State*, 2015 WL 510954, at *5 (Appendix). That recited evidence consisted of (1) the fact that "The complainant testified that after Appellant struck her with his hand, knocking her down, he said that he was going to kill her" (*Blea v. State*, 2015 WL 510954, at *5 (Appendix)) and (2) generic testimony by the responding police officer on direct examination

4

agreeing with the prosecutor that "a person's hand" can be a deadly weapon and that "someone's hands" are capable of causing death or serious bodily injury. *Blea v. State*, 2015 WL 510954, at *5-6 (Appendix).

**Recited Analysis/Conclusion In The Court's Opinion**

After recounting the above testimony, and without any specific analysis of all the commonly considered factors set forth in relevant case law, the Court of Appeals summarily concluded:

> "Appellant's statement to the complainant that he was going to kill her was some evidence of his intent to use his hand as a deadly weapon. Officer Adamo's testimony was evidence that would allow a rational trier of fact to conclude beyond a reasonable doubt that, in the manner of its intended use, Appellant's hand was capable of causing death or serious bodily injury."

*Blea v. State*, 2015 WL 510954, at *5-6 (Appendix).

**Relevant Law And Applicable Factors**

The Texas Penal Code defines the term "deadly weapon" to include "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code § 1.07(17)(B); *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005); *Baltazar v. State*, 331 S.W.3d 6 (Tex. App.—Amarillo 2010, pet. ref'd). Under this definition, "[o]bjects that are not usually considered dangerous weapons may become so, depending on the manner in which they are used during the commission of an

5

offense." *Drichas*, 175 S.W.3d at 798. A person's hands are not deadly weapons *per se* and can only become such depending on the manner in which they were used and the evidence shown. *Judd v. State*, 923 S.W.2d 135, 140 (Tex. App.—Fort Worth 1996, pet. ref'd); *Slaton v. State*, 685 S.W.2d 773, 775-76 (Tex. App.—Houston [1st Dist.] 1985, pet. ref'd) (holding that while hands could be used as deadly weapon, pushing a person over a rail with hands did not make hands deadly weapon).

Several nonexclusive factors to be considered in determining whether an object is capable of causing death or serious bodily injury are (1) physical proximity between the victim and the object, (2) the threats or words used by the defendant, (3) the size and shape of the weapon, (4) the weapon's ability to inflict death or serious injury, (5) the manner in which the defendant used the weapon, and (6) the nature of the wounds inflicted. *Dominique v. State*, 598 S.W.2d 285, 286 (Tex. Crim. App. 1980); *Kennedy v. State*, 402 S.W.3d 796, 802 (Tex. App.—Fort Worth 2013, no pet. h.); *Romero v. State*, 331 S.W.3d 82, 83 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *Bailey v. State*, 46 S.W.3d 487, 491–92 (Tex. App.—Corpus Christi 2001, pet. ref'd); *Lozano v. State*, 860 S.W.2d 152, 156 (Tex. App.—Austin 1993, pet. ref'd). No one factor is determinative, and each case must be examined on its own facts. *Brown v. State*, 716 S.W.2d 939, 946–47 (Tex. Crim. App. 1986).

Moreover, while it is true that the State need not prove that the complainant actually sustained serious bodily injury for Appellant's hand to be a deadly weapon, it must prove that his hand was capable of causing serious bodily injury in the way in which it was used or intended to be used. *Jefferson v. State*, 974 S.W.2d 887, 892 (Tex. App.—Austin 1998, no pet.); *Hill v. State*, 913 S.W.2d 581, 584 (Tex. Crim. App. 1996). The State is required to show that the object at issue had more than a hypothetical capability of causing death or serious bodily injury. *See Johnston v. State*, 115 S.W.3d 761, 764 (Tex. App.—Austin 2003), *aff'd*, 145 S.W.3d 215 (Tex. Crim. App. 2004) (when the State offered no evidence that the appellant intended to use the cigarette in any other manner that would have been capable of causing serious bodily injury, the mere fact that appellant could have caused serious bodily injury if he had used, or intended to use, the cigarette in a way other than he actually did was not supportive of a deadly weapon finding).

**Missing Analysis In The Court's Opinion**

Here, the Second Court of Appeals did not fully review or address the above-referenced factors that have been typically considered in appellate evaluations of whether an object, in the manner of its use or intended use, is capable of causing death or serious bodily injury.

The Court did not analyze or consider the complete absence of evidence addressing the size of the relative parties (or of Appellant's hand).

The Court did not analyze or consider the complete absence of evidence as to whether *Appellant's* hand had the ability to inflict death or serious injury. There was also no evidence that Appellant possessed any "special" fighting abilities, skills, or training that could make his "hand" dangerous.

The Court did not analyze or consider *how* (*i.e.*, the manner in which) Appellant actually used his hand. The Court found that the evidence supported a reasonable jury concluding that he "struck her with his hand, knocking her down," but this evidence, alone, does not support Appellant's actual use of his hand in a manner consistent with its being a deadly weapon.

The Court did not analyze or consider the nature of the wounds inflicted in this specific portion of the legal sufficiency evaluation either. It neglected to specifically consider this fact, despite the Court's having just found legally insufficient evidence to support that those injuries sustained actually constituted serious bodily injury.

The Court also did not analyze the physical proximity between the victim and the object.

The Court did recite specific evidence of one factor: the testimony concerning the threats or words used by the Appellant. However, even then,

the Court recounts this evidence in a perfunctory manner, failing to actually analyze that lone verbal threat, or evaluate it within the context under which it was made – considering all of the surrounding circumstances occurring immediately before, during, and after the assault.

## **Conclusion**

This Court is well aware of the standard of review when reviewing sufficiency of the evidence. Part of that review includes ensuring that the evidence presented actually supports a conclusion that the defendant committed the crime. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The Court erred by neglecting to conduct a proper, thorough analysis of the evidence or lack thereof. If it had conducted a full evaluation of all of the relevant factors under the proper standard of review, Appellant asserts that the Second Court would have concluded that the evidence was not legally sufficient to support that Appellant used a deadly weapon in the course of committing this assault. As a result of that conclusion the Court would have reversed and reformed Appellant's conviction to reflect that he committed a misdemeanor assault family violence and would have remanded for a punishment hearing on that lesser-included offense.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant prays this Court will grant review of Appellant's Petition for Discretionary Review or grant review of his Cross-Petition, in the event that this Court grants the State's Petition for Discretionary Review, and order a full briefing on this issue(s).

Respectfully submitted,

/s/ *Dawn A. Moore*
**DAWN A. MOORE**
BOSWELL & MOORE, P.C.
1504 EAST MCKINNEY STREET
SUITE 200
DENTON, TEXAS 76209
(940) 382-4711
(940) 349-9922 (FAX)

ATTORNEY FOR APPELLANT

## CERTIFICATE OF COMPLIANCE

I hereby certify that the word count in the foregoing Brief is 1399, having been calculated using Microsoft Word, the program used in the preparation of this Brief.

/s/ *Dawn A. Moore*
**DAWN A. MOORE**

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Petition has been served on Catherine Luft, Attorney for Appellee, 1450 East McKinney Street, Denton, Texas 76209, and Lisa McMinn, State Prosecuting Attorney, 209 West 14th Street, Suite 203, P.O. Box 13046, Austin, Texas 78711-3046, by electronic service on this, the 16th day of April 2015.

/s/ *Dawn A. Moore*
**DAWN A. MOORE**

# APPENDIX

*Blea v. State*, 2015 WL 510954, at *1
(Tex. App.—Fort Worth 2015, pet. filed)

2015 WL 510954
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION
AND SIGNING OF OPINIONS.
MEMORANDUM OPINION
DO NOT PUBLISH TEX. R. APP. P. 47.2(B)
Court of Appeals of Texas,
Fort Worth.

Juan Blea, Appellant
v.
The State of Texas, State
NO. 02–13–00221–CR | DELIVERED: February 5,
2015

FROM THE 362ND DISTRICT COURT OF DENTON
COUNTY, TRIAL COURT NO. F–2011–0993–D

**Attorneys and Law Firms**

Dawn A. Moore, Boswell & Moore, P.C., Denton, TX,
for Appellant.

Paul Johnson, Criminal District Attorney; Catherine Luft,
Chief of the Appellate Section; Andrea R. Simmons,
Michael Graves, Dustin Gossage, Assistant Criminal
District Attorneys for Denton County, Denton, TX, for
State.

PANEL: LIVINGSTON, C.J.; DAUPHINOT and
GABRIEL, JJ.

## MEMORANDUM OPINION[1]

LEE ANN DAUPHINOT, JUSTICE

**\*1** A jury convicted Appellant Juan Blea of first-degree
felony aggravated assault of a family member.[2] The jury
assessed his punishment at five years' confinement, and
the trial court sentenced him accordingly. That offense
requires both serious bodily injury and the use of a deadly
weapon.[3] In this case, the indictment alleged that
Appellant's hand was a deadly weapon. Appellant brings
a single issue on appeal, challenging the sufficiency of the
evidence that he caused the complainant serious bodily
injury rather than bodily injury as well as the sufficiency
of the evidence that he used his hand as a deadly weapon.
Because the evidence is insufficient to show that
Appellant caused serious bodily injury but sufficient to
show that he used his hand as a deadly weapon, we
reverse the trial court's judgment and remand this case to
the trial court with instructions (1) to modify the

judgment to delete the conviction for first-degree felony
aggravated assault of a family member and to instead
reflect a conviction for second-degree felony aggravated
assault of a family member, based on Appellant's use of a
deadly weapon, and (2) to conduct a new trial on
punishment for the second-degree felony.[4]

**Brief Summary of the Facts**

On the date of the offense, July 21, 2010, the complainant
and Appellant had a small daughter and shared a bedroom
in his parents' apartment. While Appellant and
complainant were not married, they did marry about two
years later.

A couple of weeks before the assault, Appellant had
separated from the complainant and moved in with a
friend. On July 20, the complainant spent time with a
male friend from school. At trial, she did not remember
whether she returned home late that night or the next
morning. Appellant visited the apartment that the
complainant shared with his parents between 10:00 a.m.
and noon on July 21 and was in a good mood. But he saw
a hickey on the complainant's neck, and when she refused
to tell him "where it was from," he became angry. When
she finally told him "who [the hickey] was from," he hit
her in the face with his hand. They were in the kitchen. At
trial, she did not remember whether his hand was open or
in a fist. In her testimony, the complainant denied falling,
but in her written statement, she had said that she had
fallen. She admitted in her testimony that in her written
statement, she had said that Appellant had told her that he
was going to kill her.

The complainant testified that Appellant hit her only
once. When the prosecutor suggested that Appellant had
continued to hit her and had asked where their daughter
was, the complainant corrected him, stating, "[A]fter he
first hit me, she started getting fussy. I told him to leave
me alone and I wanted to put her asleep (sic) because I
didn't want her around all this and us fighting."

After the complainant gave their daughter a bottle and put
her to bed in the bedroom, the couple began fighting
again in the living room. Appellant hit her in the side. She
testified that he hit her more than once and used both his
fist and his open hand. She said that he might have kicked
her with his foot and also testified that she had been in a
lot of pain after the assault. The prosecutor reminded her
that in her written statement, she had said that she was in
a "ton" of pain. The pain was in her back and her chest.
The prosecutor asked, "Did you feel like something had

been broken or terribly injured as a result of this?" The complainant responded, "Yes."

**\*2** The child woke up, so Appellant stopped hitting the complainant, and she told him that either he or she needed to go buy diapers. Appellant left the apartment and returned with the diapers. The complainant did not call the police while he was gone. When the prosecutor asked her why, she responded, "Because I didn't want to." She said that she had been scared and had not known how Appellant would act, and she had not wanted anyone to know what had happened. When Appellant returned, he and the complainant argued verbally. The prosecutor asked her whether it was evident that she was in pain. She testified that the pain had not set in yet and that she did not tell Appellant that she was in pain.

After Appellant left, the complainant lay down with their daughter, took a bath, cleaned up, and then called Appellant's parents and asked them to come home from work, stating that she had fallen down the stairs. After Appellant's parents saw her, his father called the police.

Officer Tim Adamo, who had been a police officer for twenty-three years by the time of trial, called for an ambulance after he arrived at the apartment. He described the complainant's injuries:

> The first time I contacted her, she had visible injuries. I could see scrapes, lacerations on her face. She had her—under her left eye was bruised and had a cut on it. I saw a mark on her arm, as well, like a redness and early set of bruising.
>
> ....
>
> She was on the couch in the front room.
>
> ....
>
> ... [. S]he was in quite a bit of pain. She was, like, with one arm holding her ribs, her chest, her stomach area.
>
> ....
>
> .... She said she had a hard time breathing, had a lot of pain.
>
> ....
>
> .... I was trying to get a statement from her, an affidavit, but she had a lot of difficulty writing the statement.
>
> She tried to get up from the couch at one point and she fell back to the couch in pain and that's when I called for a medic.

**Sufficiency of the Evidence**

Appellant contends that the evidence is insufficient to show that (1) he caused serious bodily injury and (2) his hand was used as a deadly weapon. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[5] Section 22.02 of the penal code provides,

> (a) A person commits an offense if the person commits assault as defined in § 22.01 and the person:
>
> (1) causes serious bodily injury to another, including the person's spouse; or
>
> (2) uses or exhibits a deadly weapon during the commission of the assault.
>
> (b) An offense under this section is a felony of the second degree, except that the offense is a felony of the first degree if:
> (1) the actor uses a deadly weapon during the commission of the assault and causes serious bodily injury to a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code[.][6]

Section 22.01 provides,

> (a) A person commits an offense if the person:
>
> (1) intentionally, knowingly, or recklessly causes bodily injury to another ...;
> (b) An offense under Subsection (a)(1) is a Class A misdemeanor ...[7]

"Bodily injury" is defined as "physical pain, illness or any impairment of physical condition."[8] "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."[9] The Texas Court of Criminal Appeals has explained that

> **\*3** [b]y virtue of the fact that the Penal Code provides a different definition for "bodily injury" from "serious bodily injury", though often a matter of degree, we must presume that the Legislature intended that there be a meaningful

difference or distinction between "bodily injury" and "serious bodily injury." Understandably, this means that where the issue is raised, the issue must be determined on an ad hoc basis.[10]

And our sister court in El Paso has explained that bodily injury cannot be elevated to serious bodily injury by postulating potential complications which are not in evidence. The [S]tate must present evidence that the [complainant] suffered bodily injury that created a substantial risk of death. In other words, the [S]tate must present relevant and probative evidence from which the trier of fact could infer beyond a reasonable doubt that the injury itself created an appreciable risk of death.[11]

The complainant's mother, Jennifer, saw her in the hospital. Jennifer testified that she noticed only the bruising and redness of her daughter's right eye. At trial, Jennifer did not remember whether her daughter had had any trouble breathing. Jennifer did take photographs of the complainant over a period of time, and the photographs revealed developing bruising over her face and body. Although Jennifer testified on direct examination that the complainant was unable to walk in the hospital and for a month afterward, on cross-examination, she admitted that the complainant could stand and walk even while still in the hospital.

The complainant did not work at her waitressing job for a month after the assault. When she returned, she switched from waitressing to acting as hostess. Jennifer testified that the job change occurred because the doctor had told the complainant not to lift more than twenty-five pounds. The complainant, however, testified,

Q Did you resume your duties as a waitress?

A I decided to be a host.

Q Why is that?

A Just so I didn't have to deal with a lot of people. I didn't want to go back to doing waitressing just yet.

Q Because you didn't want to interact with people?

A That, and everybody at Champps kind of knew

what happened, kind of the regulars. That was just kind of my way of avoiding everybody.

She also testified,

Q You don't really want to be here, do you?

A No.

Q Now, when you were taken to the hospital, were you ever in the ICU, or do you know?

A Not that I know of.

Q Just in a regular room?

A Yes.

Q Do you have any serious permanent disfigurement as a result of this incident?

A No.

Q As a result of this incident, did you have a protracted loss of the use of any bodily member or organ?

A No.

Q Have you fully recovered?

A Yes.

Q Were you able to get up and be out and about some the week after that?

A The week after the hospital?

Q Yeah, after they let you go home.

A Yeah.

Q Okay. I mean, you could get up and go do something, right?

A Yeah, yeah.

In response to the prosecutor's asking her the meaning of "protracted loss or impairment of the function of any bodily member or organ," the complainant said that she did not know a specific definition, but that she "probably would know that" and "if [she] did have that, wouldn't a doctor tell [her]?"

**\*4** The trial court admitted State's Exhibits 18 and 19, hospital records, but after reconsideration, withdrew the exhibits. The court reporter erroneously included those

two exhibits in the record, but both the State and Appellant conscientiously asked this court not to consider those exhibits because they were never before the jury. We granted their request and have not considered those exhibits.

The complainant's injuries included two fractured ribs and a fractured maxillary sinus bone. She was kept in the hospital for four days and then "medically cleared for discharge." Kristie Brown, a nurse practitioner at Parkland Hospital, testified concerning the complainant's medical treatment. Brown testified that the complainant had a collapsed lung, but it had already been treated when Brown met the complainant the morning after her admission to the hospital. Brown explained that a person with a collapsed lung "can have trouble breathing, and it can affect blood pressure, vital signs that [medical professionals] look at." Although the complainant had testified that "they said my liver was lacerated, or something," no other evidence of a lacerated liver was presented to the jury. Brown did testify that there was an injury to the complainant's liver and an injury in her chest. Brown admitted that she was repeating the radiologist's opinion, and the trial court sustained Appellant's objection to her testifying about anything somebody else did. But the trial court did not instruct the jury to disregard. Brown testified that she checked for peritonitis or other problems caused by a liver injury; none was discovered. There was no evidence that any injury to the complainant's liver was a serious bodily injury.[12] The following exchange occurred:

> Q So at all times, her liver was functioning and doing what it was supposed to be doing?
>
> A Yes, sir.
>
> Q And—all right. Same with her lungs? I mean, she could breathe, right?
>
> A Yes, sir, she was breathing.
>
> Q And I assume you tested her blood for oxygen level?
>
> A Yes, sir.
>
> Q And I guess her blood was—her lungs were working like they were supposed to?
>
> A Yes, sir.
>
> Q I mean, they were providing enough oxygen to her?
>
> A Yes, sir.

> Q Now, on the broken ribs, what treatment was given to her for the broken ribs?
>
> A Pain medication and respiratory, what we call incentive spirometry, just deep-breathing exercises, and pain medication.
>
> Q When we hear broken ribs, we think of something sticking through the skin, something like that.
>
> The rib was, I guess, still intact, for want of better words, but there was a fracture in it?
>
> A There was a fracture in it. What alignment it had, I would have to review the chest x-ray. I don't remember.
>
> Q In any event, there was nothing done to tape her up or set any fractures or have any surgery regarding the ribs?
>
> A That is correct.
>
> Q Okay. And would the same be true of the maxillary sinus?
>
> A That's correct. Due to the swelling, they saw her—we recommended that she be seen in clinic after she was discharged home from the hospital.
>
> Q But no surgery or any procedures were done to repair that damage?
>
> A That's correct.
>
> Q It just healed on its own?
>
> A That is correct.

The only evidence that the complainant could have suffered serious bodily injury arose from the State's inquiry whether "any injury to the liver [is] treated seriously or minimally" by Brown's "profession." She replied that they are treated seriously because

> *5 [i]njuries to the liver can cause a patient to bleed to death very quickly. Knowing that there is an injury to the liver and why it is and whether it is actively bleeding or has developed a blood clot to the liver makes a decision point for what the surgeons do and what we do for the patient.

But there was no evidence that the complainant suffered

from such a condition.

The prosecutor then asked whether "lungs [are] treated seriously or minorly." Brown replied, "Seriously." When asked to explain why lungs are treated seriously, she replied, "Because if we can't control our oxygenation, we need oxygen to live, and you can die from that." But Brown did not testify that the complainant suffered from such a condition. No one did. Indeed, Brown monitored the complainant to determine whether a substantial risk of death or any risk of death developed from any injury, and it did not.

Considering all the evidence, we hold that there is no evidence from any source that would allow a jury to conclude or infer beyond a reasonable doubt that the complainant's injuries created a substantial risk of death.[13]

We must next consider whether the complainant suffered permanent disfigurement or protracted loss or impairment of the use of a bodily member or organ.[14] She testified that she had suffered neither. The only suggestion of such loss or impairment is Jennifer's testimony that the doctors told the complainant not to lift more than twenty-five pounds. Jennifer did not say how long the limitation was to last but said that it was because of the complainant's ribs. Jennifer also agreed that "we don't know whether or not [the complainant] was physically capable [of lifting], but she followed their advice."

The complainant testified that she was fully recovered. She also testified that she was able to go out and about some as soon as she was released from the hospital.

The *Moore* court instructs us that
> given the common meaning of the word "protracted," the complainant's mother's testimony, on which the State relies, that the complainant was bedridden and that it was at least a week "before he could really go out and see people," does not even come close to establishing that the injury the complainant sustained to his back was either continuing, dragged out, drawn out, elongated, extended, lengthened, lengthy, lingering, long, long-continued, long-drawn, never-ending, ongoing, prolix, prolonged, or unending.[15]

We have carefully examined the record. There is no evidence that the complainant suffered serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ.[16] We therefore hold that the evidence is insufficient to support the element of serious bodily injury.

But the evidence is sufficient to support the deadly weapon finding. Testimony touching on whether Appellant's hand was a deadly weapon in the manner of its use or intended use included that of the complainant and that of Officer Adamo, the responding police officer. The complainant testified that after Appellant struck her with his hand, knocking her down, he said that he was going to kill her. Officer Adamo testified on direct examination by the prosecutor,

> **\*6** Q [C]an a person's hand be a deadly weapon?
>
> A Yes, it can.
>
> ....
>
> Q [D]o you feel that someone's hands are capable of causing death or serious bodily injury?
>
> ....
>
> A Yes, they are very capable.

Appellant's statement to the complainant that he was going to kill her was some evidence of his intent to use his hand as a deadly weapon. Officer Adamo's testimony was evidence that would allow a rational trier of fact to conclude beyond a reasonable doubt that, in the manner of its intended use, Appellant's hand was capable of causing death or serious bodily injury. Accordingly, we hold that the evidence is sufficient to support the jury finding that Appellant's hand was a deadly weapon in the manner of its intended use but that the evidence is insufficient to support the serious bodily injury finding. We therefore sustain in part and overrule in part Appellant's sole issue on appeal.

**Conclusion**

Because the State proved only second-degree aggravated assault of a family member beyond a reasonable doubt, that is, it proved that Appellant committed an assault against the complainant and used a deadly weapon during its commission, we reverse the trial court's judgment in part. We remand this case to the trial court with instructions to (1) modify its judgment to delete the first-degree felony conviction of aggravated assault of a family member and to instead reflect a second-degree felony conviction for aggravated assault of a family member through the use of a deadly weapon and (2) conduct a new trial on punishment.[17]

LIVINGSTON, C.J., filed a dissenting opinion.

TERRIE LIVINGSTON, CHIEF JUSTICE, dissenting.[1]

Because the majority's opinion improperly applies standards for reviewing the sufficiency of evidence to show that the victim suffered serious bodily injury, I dissent from the decision to reverse the trial court's judgment and to remand for the entry of a judgment that reflects only a second-degree felony conviction.[2]

When deciding an evidentiary sufficiency issue in a criminal appeal, our usual deference to a jury's verdict requires us to weight appellate scales in favor of affirming a judgment of conviction. *See Winfrey v. State,* 323 S.W.3d 875, 879 (Tex.Crim.App.2010). We do so by applying settled principles aimed at preventing us from becoming a "thirteenth juror." *See Thornton v. State,* 425 S.W.3d 289, 303 (Tex.Crim.App.2014); *Isassi v. State,* 330 S.W.3d 633, 638 (Tex.Crim.App.2010) (explaining that in reviewing the sufficiency of evidence to support a conviction, we guard "against the rare occurrence when a factfinder does not act rationally"). Those principles include considering the evidence, along with reasonable inferences from the evidence, in the light most favorable to the verdict; deferring to the factfinder's exclusive role to resolve conflicts in the evidence (and inferences therefrom)[3] and to judge the credibility of witnesses; assessing incriminating evidence cumulatively rather than requiring each fact to directly support guilt; allowing for circumstantial evidence alone to support a conviction; and recognizing that a factfinder is free to accept or reject any or all of the testimony of any witness. *Whatley v.* State, 445 S.W.3d 159, 166 (Tex.Crim.App.2014); *Thomas v. State,* 444 S.W.3d 4, 8 (Tex.Crim.App.2014); *Dobbs v. State,* 434 S.W.3d 166, 170 (Tex.Crim.App.2014); *Hernandez v. State,* 161 S.W.3d 491, 500–01 (Tex.Crim.App.2005).

**\*7** In showing fidelity to these principles in this appeal, we should determine that the evidence is sufficient to prove that the complainant suffered serious bodily injury, meaning bodily injury[4] that created "a substantial risk of death ... or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code Ann. § 1.07(a)(46); *see id.* § 22.02(a)(1), (b)(1). The complainant testified that as a result of appellant's hitting her side repeatedly, she felt "a lot of pain" in her back and chest and could not breathe. She believed that she had been "terribly injured." Appellant's father noticed that the complainant had difficulty walking. Hospital personnel told her that she had a collapsed lung, among other injuries. The complainant stayed in a hospital several days, and a "month or so" passed before she was able to return to work.

Kristie Brown, a nurse practitioner, confirmed that the complainant had suffered a lung injury. Concerning that injury—a pneumothorax—Brown testified,

> if you have a box and a balloon blown up inside the box and the balloon shrinks over time, there is air between the box and the balloon, that is a pneumothorax. Most of the time, the lungs should be expanded in our chest and touching the sides of the box, but when the lung collapses, it's just like a balloon that has a small leak in it and collapses down.

> When that occurs, the patient, [the complainant], can have trouble breathing, and it can affect blood pressure, vital signs that we look at.

The complainant's mother testified that while in the hospital, the complainant was not able to move around the room, and treatment for her collapsed lung required the insertion of a chest tube. According to the complainant's mother, after the complainant left the hospital, she could not work or walk without pain for some time, and when she returned to work, she was instructed to not lift anything over twenty-five pounds.

While it is true that the complainant's condition improved upon medical treatment, in determining whether evidence is sufficient to establish serious bodily injury, the relevant issue is the impairing effect of the bodily injury as it was inflicted, not after the effects have been ameliorated by medical treatment. *Jackson v. State,* 399 S.W.3d 285, 291 (Tex.App.–Waco 2013, no pet.)(mem.op.); *see Webb v. State,* 801 S.W.2d 529, 532 (Tex.Crim.App.1990); *Sizemore v. State,* 387 S.W.3d 824, 828 (Tex.App.– Amarillo 2012, pet. ref'd). And serious bodily injury may be established without a physician's testimony when the injury and its effects are obvious. *Sizemore,* 387 S.W.3d at 828.

Brown testified that injuries to lungs are treated seriously because the lungs control oxygenation and affect blood pressure and "vital signs." Brown also explained that improper oxygenation can cause death. Thus, the jury could have reasonably inferred that if the complainant had not received the procedure that Brown described (presumably, the tube that the complainant's mother testified about) to help with her difficulty in breathing, the complainant faced a substantial risk of death. *See id.; see also Patterson v. State,* No. 11–06–00209–CR, 2008 WL 564880, at \*3 (Tex. App–Eastland Feb. 28, 2008, pet. ref'd) (not designated for publication) (concluding that testimony that the victim had trouble breathing and received treatment for a pneumothorax that if left untreated, could cause death, was sufficient to prove that the victim had a serious bodily injury); *Pedro v. State,*

No. 01–88–00197–CR, 1988 WL 139708, at *2 (Tex.App.–Houston [1st Dist.] Dec. 22, 1988, no pet.)(not designated for publication) ("[T]he possibility that [a collapsed lung] could cause death, combined with the testimony that the complainant's lung was punctured, does support a finding that [a knife] was capable of causing 'serious bodily injury.' ").

**\*8** Viewing the evidence in the light most favorable to the verdict and allowing the jury to draw reasonable inferences from the evidence, I would hold that based at least on the facts concerning the injury to the complainant's lung, that this injury required treatment through a tube, and that injuries to lungs can be life-threatening, the evidence was sufficient for the jury to find that without treatment, the complainant faced a substantial risk of death. *See* Tex. Penal Code Ann. § 1.07(a)(46).

Moreover, I would also conclude that the evidence was sufficient to show that the complainant sustained a serious bodily injury because she suffered from a protracted impairment of the functioning of her body. *See id.* The complainant testified that the injuries she suffered as a result of the assault required her to miss a "month or so" of work. Her mother testified that during that time, the complainant "couldn't work" and just "[laid] around" because walking was painful. I would hold that these month-long effects from the assault qualify as a "protracted" impairment of the complainant's bodily functions. *See id.*; *Williams v. State,* 575 S.W.2d 30, 33 (Tex.Crim.App. [Panel Op.] 1979) (holding "that the injury which caused [the victim] to lose lifting power in his arm for three months" constituted a protracted impairment of the function of a bodily member, so that "the wound would be classified as serious bodily injury"); *Madden v. State,* 911 S.W.2d 236, 244–45 (Tex.App.–Waco 1995, pet. ref'd) (concluding that there was serious bodily injury by protracted impairment of a bodily member when the victim was shot in the hip, hospitalized for a day and a half, could not walk for a month after the shooting, and had permanent scar tissue where the bullet entered and exited his body); *see also Tucker v. State,* No. 05–01–01899–CR, 2002 WL 32397713, at *1–2 (Tex.App.–Dallas Oct. 30, 2002, no pet.)(not designated for publication) (holding that there was protracted impairment when the victim had a fractured jaw, was restricted to a liquid diet for three weeks, and had jaw pain for a month).

For all of these reasons, I respectfully dissent from the majority's opinion and judgment.

Footnotes

1        *See* Tex.R.App. P. 47.4.

2        *See* Tex. Penal Code Ann. § 22.02(b)(1) (West 2011).

3        *Id.*

4        *See id.* § 22.02(a)(2)-(b).

5        *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); *Winfrey v. State,* 393 S.W.3d 763, 768 (Tex.Crim.App.2013).

6        Tex. Penal Code Ann. § 22.02(a)-(b).

7        *Id.* § 22.01 (West Supp.2014).

8        *Id.* § 1.07(a)(8).

9        *Id.* § 1.07(a)(46).

10       *Moore v. State,* 739 S.W.2d 347, 349 (Tex.Crim.App.1987).

11      *Hernandez v. State,* 946 S.W.2d 108, 112 (Tex.App.—El Paso 1997, no pet.)(citations and internal quotation marks omitted).

12      *See id.* at 111–13 (holding that a 1–centimeter laceration of the liver was unlikely to cause death and not serious bodily injury).

13      *See*Tex. Penal Code Ann. § 1.07(a)(46).

14      *See id.*

15      739 S.W.2d at 352.

16      *See*Tex. Penal Code Ann. § 1.07(a)(46).

17      *See Bowen v. State,* 374 S.W.3d 427, 432 (Tex.Crim.App.2012).

        *See*Tex.R.App. P. 47.4, 47.5.

2       *See*Tex. Penal Code Ann. § 22.02(b)(1) (West 2011).

3       The majority appears to resolve conflicts in witnesses' testimony against the jury's verdict. *See* Majority Op. at 8–10.

4       "Bodily injury" includes pain or any impairment of physical condition. Tex. Penal Code Ann. § 1.07(a)(8) (West Supp.2014).

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2015 Thomson Reuters. No claim to original U.S. Government Works.